Syllabus.

## Richmond.

### COMMONWEALTH OF VIRGINIA, AT THE RELATION OF THE STATE TAX BOARD AND C. LEE MOORE, AUDITOR OF PUBLIC ACCOUNTS, v. THE DEFORD COMPANY, INC.

November 15, 1923.

1. TAXATION—*Correction of Erroneous Assessment at the Instance of the Commonwealth—Omitted Taxes—Limitations—Section 2385 of the Code of 1919 and Acts 1918, p. 432—Case at Bar.*—The instant case was an appeal by the Commonwealth from an order dismissing a petition for an appeal from and review of an order of a local board of review. The assessment alleged by the petition to be erroneous was made by the direction of the local board of review on the 5th day of December, 1917, and in January, 1921, more than two years thereafter, the original petition for its correction was filed.

   *Held:* That the order dismissing the petition was not erroneous, as the petition was not filed, as required by section 2385 of the Code of 1919, within two years from the first of September of the year in which the assessment was made; and that Acts 1918, p. 432, effective when the petition was filed, did not then authorize the assessment of omitted taxes for more than three years next preceding the year in which the assessment was made.

2. TAXATION—*Correction of Erroneous Assessmen—at the Instance of the Commonwealth—Limitations—Acts 1916, p. 471—Acts 1916, p. 419.*—In the instant case it was argued that as the act of March 16, 1916 (Acts 1916, p. 471), provided no time limit to the appeal on behalf of the State from the decision of the local board of review authorized thereby, that the lapse of two years did not preclude the State from appealing from an order of the local board of review. But this act must be considered in connection with section 7, clause (1), of the subsequent act, approved March 17, 1916, which authorizes the Commonwealth to secure the correction of erroneous assessments made under the authority of the boards of review "in the same manner" in which aggrieved taxpayers are authorized to seek such relief. Hence, the Commonwealth, under the statutes, must proceed in the same way and in the same time as the taxpayer is required to

proceed under section 2385 of the Code of 1919. The manifest legislative policy of the State is to make an end of such litigation and the administrative and judicial officers of the State are bound thereby.

3. TAXATION—*Correction of Erroneous Assessment at the Instance of the State—Meaning of the Word "Appeal" as Used in Acts 1916, p. 471, and Acts 1916, p. 419.*—The word "appeal," as used in Acts 1916, p. 419, and Acts 1916, p. 471, providing for an appeal at the instance of the Commonwealth from the decision of local boards of review, is merely a provision for transferring the controversy to the court for review of the action of an administrative board. The word is not used technically as is the word "appeal" when providing for appeals from inferior courts of record to appellate courts. As there used it is in substance and effect nothing more than an application for the correction of an assessment for taxes alleged to be erroneous.

4. LIMITATION OF ACTIONS—*Limitation Against the State—Taxation—Limitations that Bar Accrued Rights—Limitations of Time Integral Part of Statute.*—Section 174 of the Constitution of 1902 and section 5829 of the Code of 1919, regarding the running of the statute of limitation against the State, have no application to a special limitation prescribed by the same statute which creates the right. The distinction between statutes of limitation which bar rights, which have once accrued, and limitations of time which are an integral part of the statute creating the right, is everywhere recognized. These provisions relate to statutes of limitation which bar rights which have once accrued and have no reference to the power of the administrative tax officials, acting under statutes which constitute their sole authority to act.

5. TAXATION—*Correction of Erroneous Assessment—Omitted Taxes—More than Three Years Preceding that n which the Assessment was Made—Case at Bar.*—At the time the petition in the instant case was filed, January, 1921, for a review of the action of a local board of review, in fixing the amount of an assessment for taxation, the officials, administrative and judicial, were only authorized by the act approved March 15, 1918 (Acts 1918, p. 432), to assess omitted taxes for any year of the three years next preceding that in which the ascertainment or assessment is made. The ascertainment from which the three years are counted back is the official ascertainment by the act of assessing, and the year of ascertainment is the year in which the previously omitted property is actually assessed, and not the date of the discovery of the omission by an examiner of records.

6. TAXATION—*Omitted Taxes—Acts 1918, p. 432—"Ascertain" and "Assess."*—The words "ascertain" and "assess" are sometimes used in the act of March 15, 1918 (Acts 1918, p. 432), interchangeably,

and both refer, not to a secret mental attitude of a public official, but to the acquisition of information which results in an assessment, that is, to the official action which is required of him by law.

7. PRESUMPTIONS AND BURDEN OF PROOF—*Public Officers.*—There is a presumption that public officials discharge their duties.

8. TAXATION—*Omitted Taxes—Acts 1918, p. 432.*—Acts of 1918, p. 432, provide that "nothing contained in this act shall operate to invalidate or defeat any assessment of property, or income or inheritance, or any suit or action for the collection of any taxes, made or commenced prior to the date on which this act shall become effective." The subject of the word "commenced" in the clause is "suit or action," that is, legal proceedings which were then pending, while the word "made" refers alone to assessments completed, that is, made final under pre-existing statutes, before the 1918 act became effective. It is such legal proceedings that cannot be defeated and such assessments that cannot be reopened or nvalidated by the operation of the act.

Error to a judgment of the Circuit Court of Page county, in a proceeding to correct an erroneous assessment. Judgment for defendant. The Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*John R. Saunders, Attorney-General,* and *E. Warren Wall,* for the plaintiff in error.

*W. V. Ford, D. O. Dechert* and *John T. Harris,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

[1] The Commonwealth of Virginia, at the relation of the State Tax Board and C. Lee Moore, Auditor of Public Accounts, complains of an order of the circuit court dismissing its petition for an appeal from and review of an order of the local board of review of Page county. The assessment of additional capital of the

Deford Company, Inc., which had been omitted from taxation for the years 1905 to 1916, inclusive, is involved. These facts appear:

The capital of the company had been reported and assessed at $40,000.00 for each of these years. In November, 1917, the examiner of records, having jurisdiction, reported that the company was also liable for omitted taxes on additional capital for the years 1905 to 1916, inclusive, aggregating $11,440,000.00. The board of review, after a hearing, reduced that amount to $1,-763,000.00. This reduced amount was reported to the commissioner of the revenue, the taxes thereon extended upon the tax books and duly paid. This assessment here alleged to be erroneous was made by direction of the local board of review on the 5th day of December, 1917. More than two years thereafter, in January, 1921, the original petition for its correction was filed. This petition was thereafter amended, making more specific allegations to the general effect that the company had fraudulently concealed its assets and owed the Commonwealth a very large amount of money for omitted taxes upon its capital. The petition having been dismissed by the trial court, we are to consider whether the court had jurisdiction to afford any relief, assuming the allegations of the petition to be true. This depends primarily upon certain statutes of Virginia then and now in force, because it is fundamental that there must be legislative sanction for the assessment and collection of taxes.

The motion to dismiss is based upon two grounds— one, that the petition for the review and correction of the assessment of December 5, 1917, was not filed as required by statute, now Code, section 2385, within two years from the first of September of the year in which the assessment was made; and the other, that the act of

March 15, 1918 (Acts 1918, p. 432), which was effective when the petition here under review was filed, did not then authorize the assessment of omitted taxes for more than three years next preceding the year in which the assessment is made.

[2, 3] 1. Taking up the first of these grounds, we find that the Commonwealth relies upon an act approved March 16, 1916 (Acts 1916, p. 471), which provides that "the State Tax Board or the Auditor of Public Accounts, may, on behalf of the Commonwealth; or the taxpayer, or the attorney for the county, city or town, may appeal from the decision of the local board of review to the circuit court of the county, or the corporation or hustings court of the city, or to the circuit court of a city having no corporation or hustings court, and may, from the decision of the court, appeal to the Supreme Court of Appeals of Virginia, if under the laws of this State an appeal lies to that court."

It is argued therefrom that there is no time limit to the appeal from the decision of the board of review which is thus authorized, and hence that the lapse of two years does not preclude this proceeding. If this contention is sustained, it appears also to lead to the conclusion that no lapse of time could preclude the taxpayer from resorting to such an appeal. Such a construction, however, would nullify the other statutes of the State which prescribe the limit of time within which an erroneous assessment can be corrected at the instance of the taxpayer. That construction also leads to this result, that all of the assessments heretofore made under authority of the local boards of review which have not been appealed from, are still open for appeal and review whenever the tax officers of the Commonwealth reach the conclusion that they should be reopened, and thus the several statutes so carefully drawn for the purpose

of making an end of such litigation—statutes of repose—would become statutes of unrest, and provide for indefinite litigation.

The true view is to consider this statute in connection with section 7, clause (*l*), of the subsequent act, approved March 17, 1916 (Acts 1916, p. 419), which, referring to corrections of erroneous assessments made under authority of the local boards of review, contains this language: "The State Tax Board or the Auditor of Public Accounts on behalf of the Commonwealth, or the attorney for the county, city or town, on behalf of the county, city or town, or taxpayer aggrieved by such order, may apply to the circuit court of the county, to the corporation or hustings court of the city, or to the circuit court of any city which has no other court of record, for the correction of any erroneous assessment of license taxes, or of erroneous assessments of lands or other property, either as to over or under valuation, in the same manner as is provided by law for the correction of erroneous assessment of property by any person who is aggrieved thereby." Then in the same act (subsection "o") this appears: "* *   no order made by said board shall prevent the taxpayer, or member or members of a board of supervisors, board of supervisors, member or members of a city or town council, city or town council, or any other governing board of any city or town, or the Commonwealth, from applying to the proper court for correction of any erroneous assessment in the manner provided by law."

These statutes are substantially, if not identically, re-enacted in the Code of 1919. It is observed, then, that the Commonwealth is authorized to secure the correction of erroneous assessments made under the authority of the boards of review "in the same manner" in which aggrieved taxpayers are authorized to seek

such relief. If there be any conflict between this later statute authorizing the Commonwealth to apply for the correction of erroneous assessments, and the statute passed on the preceding day authorizing the Commonwealth to appeal from the decision of the local board of review for the correction of their alleged errors, then the later statute must prevail. While both are now in the Code, at the time of this assessment, in 1917, the present Code had not become effective. We do not, however, think that there is any substantial conflict. The act of March 16th, authorizing an appeal, provided no method for taking such an appeal, and as the board of review is not a court, but an administrative body, can only be construed as equivalent to authorizing an application to the court for a hearing anew of the questions involved. On the succeeding day, March 17th, the General Assembly provided the machinery for making this application or appeal. The word "appeal" when used in a statute of this character, is merely a provision for transferring the controversy to the court for review of the action of an administrative board. The word is not used technically as is the word "appeal" when providing for appeals from inferior courts of record to appellate courts. Here it is in substance and effect nothing more than an application for the correction of an assessment for taxes alleged to be erroneous. That the taxpayer is limited in time seems to us beyond controversy, and in our judgment it follows that a fair construction of these statutes must be that the same limit of time, two years, which is applied to the taxpayer who feels aggrieved by assessments claimed to be erroneous, of necessity and in common justice applies also to the Commonwealth.

We considered a kindred question in the case of *American Tobacco Co.* v. *Richmond*, 125 Va. 33, 99 S. E.

777. There we said this, as to erroneous taxes which had been collected by the city of Richmond: "If this judgment is sustained the city of Richmond will be permitted to retain an erroneous tax assessed by it in 1915 for that year at the higher local rate, upon the theory then held that such tobacco as was stored in Richmond was taxable as tangible property, and at the same time in 1917, after it is too late to correct this error against the taxpayer, to reach out and tax for the same year, 1915, the tobacco then held by the company in the other localities upon the theory that it was taxable in Richmond as intangible property. In the forum of conscience such a claim does not appeal to the natural sense of justice. If it is sustained, it should only be because the statutes controlling the question plainly so require. The remedies in such cases, both for the municipality and the taxpayer, should be mutual, and it being clear that the taxpayer in such case is without remedy as to these taxes erroneously assessed and collected for 1915, in Richmond and elsewhere, therefore the city ought to be denied the right to reassess and tax property, which has already been once taxed, after the lapse of the two years, which bars the remedy of the taxpayer."

In *Kearney County* v. *Hapeman*, 102 Neb. 552, 167 N. W. 792, we find that a converse question was decided in the same way. There the right of the county to appeal was challenged under a statute which authorized any person or persons dissatisfied with the appraisement or assessment to appeal, but made no reference to an appeal by the county if its representatives claimed that the assessment was too low, and the court in holding that there was an implied right of appeal for the county under such a statute, said this: "The law favors the right of appeal, and that too on equal terms and without discrimination as to either party. It is

elementary that a statute providing otherwise would be unconstitutional. It is held generally that if a statute grants the right of appeal to one party, such statute will not be construed to be exclusive as to the other party. 2 R. C. L. 28; 2 Sutherland (Lewis') Statutory Construction (2d ed.) secs. 516, 717."

Our conclusion then is that these statutes provide the machinery for an appeal or application by the State to correct erroneous assessments of omitted taxes by increasing them, within the same period of time as was then and is now provided by the statute, now Code, section 2385, for the decreasing of such assessments when sought by persons aggrieved thereby. The Commonwealth, under these statutes, must proceed in the same way and in the same time as the taxpayer is required to proceed. The manifest legislative policy of the State is to make an end of such litigation and the administrative and judicial officers of the State are bound thereby.

[4] Another contention which is made for the Commonwealth is that this two year limit does not affect or bind the State. This is based upon Code, section 5829, which provides that "no statute of limitations, which shall not in express terms apply to the Commonwealth, shall be deemed a bar to any proceeding by or on behalf of the same;" and Constitution, section 174, which provides, "After this Constitution shall be in force no statute of limitation shall run against any claim of the State for taxes upon any property; nor shall the failure to assess property for taxation defeat a subsequent assessment for and collection of taxes for any preceding year or years unless such property shall have passed to a *bona fide* purchaser for value without notice; * *."

The answer to this contention is clearly indicated in *Savings Bank* v. *Powhatan Clay Co.*, 102 Va. 274, 46 S. E. 294, 1 Ann. Cas. 83, in which many pertinent author-

ities are cited. The method of exercising the governmental power of taxation depends upon Constitution or statute. This application depends upon a statute— that is, the very right itself is accorded by the statute. As that statute is relied on, and the proceeding can be maintained only in accordance therewith, the limitation of time thereby prescribed is so incorporated in the remedy given as to make it an integral part of it, and hence makes it a condition precedent to the maintenance of the proceeding. It is a special limitation prescribed by the same statute which creates the right. The distinction between statutes of limitation which bar rights which have once accrued and limitations of time which are an integral part of the statute creating the right, is everywhere recognized, and as to this it is only necessary to cite one other Virginia case—*Dowell* v. *Cox*, 108 Va. 460, 62 S. E. 272, where it is held that the statutory requirement that an action for wrongful killing shall be brought within one year affects the right as well as the remedy and can therefore be availed of by demurrer.

This much may be said about these provisions, constitutional and statutory: Whatever else they may include, they certainly relate to statutes of limitation which bar rights which have once accrued. Certainly under the constitutional provision the General Assembly is restrained from passing a statute which would bar the collection of taxes which have been lawfully and finally levied and assessed, for this would bar a right of the Commonwealth which has already accrued. It is not necessary in this case for us to consider what other restraint the provision imposes upon the General Assembly. The question here is not as to limitations upon the power of the State to provide for reassessments of omitted property for taxation, but as to the power of the administrative officials, acting under statutes which

constitute their sole authority to act. The constitutional provision is not self executing, and neither the administrative nor judicial agents of the State have any powers with reference to the assessment or collection of taxes except those which the General Assembly for the State has conferred. So that, notwithstanding the constitutional limitation, we must determine the question here presented from the statutes, and enough has been said to show that we think that this petition was filed too late and without authority of law.

[5-7] 2. Taking up the second of the defenses relied on, little need be said which has not already been indicated. At the time this petition was filed, January, 1921, the officials, administrative and judicial, were only authorized by the act approved March 15, 1918 (Acts 1918, p. 432), to assess omitted taxes for any year of the three years next preceding that in which the ascertainment or assessment is made. Hence they could not assess any such taxes for the years 1905 to 1916, inclusive.

There is an argument for the Commonwealth, based upon the difference in meaning between the word "ascertainment" and the word "assessment." Taking the statute as a whole, we think that this is not here significant. Just as soon as the assessing officer ascertains the fact that property which should have been taxed has been omitted, it is his duty to assess it. The words "ascertain" and "assess" are sometimes used in this statute interchangeably, and both refer, not to a secret mental attitude of a public official, but to the acquisition of information which results in an assessment, that is, to the official action which is required of him by law. This official duty is promptly to make a legal assessment of all the property which he is directed to assess just as soon as he ascertains that it is liable. At the time when this petition was filed, 1921, no official in this

State had any authority to assess such property for more than three years next preceding the date when he ascertained that it had illegally escaped its just burden of taxation. We must presume, therefore, that as soon as the officials who instituted this proceeding ascertained that the property had been omitted, they proceeded to take such steps as they were advised to take for its assessment. It is said, however, that the ascertainment here relied upon was made by the examiner of records in 1917, but the answer to this is, that the taxing officials then included not only the examiner of records, but also the local board of review and the commissioner of the revenue, and that acting conjointly they then ascertained that the only taxes which had been omitted were those which were at that time assessed and were thereafter paid; and that if they had then ascertained that any greater amount had been omitted, they would then have assessed it, for there is a presumption that public officials discharge their duties. The mere fact that the examiner of records differed with the board of review as to the amounts which had then been omitted is immaterial because the board of review had power by the statutes then in effect to reduce the amount reported by the examiner of records, and having done so the amount thus made final by assessment then made must be held to be the amount then ascertained.

[8] The Commonwealth further relies upon the final clause of the act of 1918, just referred to, which so far as applicable reads thus: "Nothing contained in this act shall operate to invalidate or defeat any assessment of property or income or inheritance, or a suit or action for the collection of any taxes, made or commenced prior to the date on which this act shall become effective; * *" It is argued therefrom that this is an

assessment which was commenced prior to the effective date of the act—that is, commenced by the examiner of records in November, 1917. We cannot accept this suggestion for two reasons. One is that even if in fact the subject of the verb "commenced" were "assessments," it means the assessments described, *i. e.*, those which had been commenced but had not been completed prior to that date. It could not mean assessments which had been completed, ended, made effective, prior to that date. We are not here considering an uncompleted assessment, for this assessment had not only been made, but the tax extended thereon had long been paid. The other reason is apparent from the language used. The subject of the word "commenced" in the clause is "suit or action," that is, legal proceedings which were then pending, while the word "made" refers alone to assessments completed, that is, made final under pre-existing statutes, before the 1918 act became effective. It is such legal proceedings that cannot be defeated and such assessments that cannot be reopened or invalidated by the operation of the act. If section 174 of the Constitution and these statutes should receive the construction contended for by the Commonwealth, then every assessment of omitted taxes which has ever been made by any board of review, though accepted in good faith and acted upon by the payment and receipt of the additional taxes demanded, may still continue to be the subject of litigation, and the State still has the unlimited right of appeal which the legislature cannot deny. Such a result would be intolerable, oppressive, has no constitutional sanction, and would plainly controvert the legislative policy of this State with reference to omitted taxes, which has been so clearly and repeatedly expressed. *Comth.* v. *United Cig. Machine Co.*, 120 Va. 835, 92 S. E. 901;

*Rixey's* v. *Commonwealth,* 125 Va. 354, 99 S. E. 573, 101 S. E. 404.

The case was carefully considered by the learned judge of the trial court, Honorable T. N. Haas, who has thus expressed himself upon the issues involved:

"This application is to correct and increase an assessment of omitted taxes on the capital of the defendant company employed in business for the years from 1905 to 1916, both inclusive, which assessment was made by or under the direction of the board of review of assessments of Page county in November, 1917, on a report made to it by H. W. Wyant, examiner of records, in which assessment by the local board the amount of capital employed in business with which the defendant company was chargeable for several years as reported by the examiner of records was largely reduced by the local board. This application to the court was made at the January term, 1921, at which time leave was given the plaintiff to file an amended petition.

"The case is now heard on the original and amended petitions and the motion of the defendant to dismiss the same, which motion is to be considered as of the character of a demurrer, the petitions setting out at large the grounds upon which the applicant relied for increasing the assessments made by the local board of review, and it being of no use to hear evidence or to proceed any further with the matter if, under the facts as alleged, there can be no further assessment of defendant's property.

"Some discussion has occurred in the briefs of the right to apply to the court for the correction of an assessment made by the local board, given by paragraph 1, of Code, section 2227, as distinguished from the right of appeal from the local board given by Code, section 2263.

"The court makes no distinction whatever between these rights, but regards them as one and the same. The difference in language arises out of the fact that the same subject matter being dealt with at the same time by different acts of legislation, but the meaning in each is the same, namely, that a party aggrieved, whether State, county, city, town or taxpayer, shall have the right to apply to the court to review the assessment made by the local board, and this by oral motion or written petition as the applicant for relief may see fit to proceed.

"The word *appeal* in connection with the review of tax assessments was first used in an act of March 18, 1915 (Acts Ex. Sess. 1915, p. 226, sec. 496), and it applied to an appeal by the taxpayer from the commissioner of the revenue to the local board of review, not from the action of the board of review, and this act, it is worthy of notice, used the language 'may appeal or apply to' the local board to have the valuation reviewed and corrected.

"By an earlier act of February 16, 1915 (Acts Ex. Sess. 1915, p. 95, par. 7), as well as the act of March 17, 1915, (Acts Ex. Sess. 1915, p. 154, par. 7), the same General Assembly gave the right to the taxpayer to apply to the court to correct any assessment of the board of review by which he was aggrieved, the same to be corrected under the provisions of Code (1904), sections 567 and 568; and by paragraph 6 of the same acts, the local board of review and other official boards on behalf of the Commonwealth were given the right to apply to the court to correct any assessment in the same manner as is provided by law for the correction of an assessment at the instance of a taxpayer. This act of February 16, 1915, was the first act giving the Commonwealth the right to apply to the court to correct an erroneous assessment.

"What is now section 2263 of the Code, giving an appeal from the local board to the court, was first enacted in 1916 as an amendment to section 450 of the Code of 1904. It was approved March 16, 1916 (Acts of 1916, p. 467, 471), and the very next day, March 17, 1916, without any mention of the act of the day before, another act was approved (Acts 1916, p. 413), a comprehensive. one amending the act of March 17, 1915, *supra*, providing for a State advisory board, a local board, prescribing their functions, etc., and giving the right (par. 1) to the State Tax Board and the Auditor of Public Accounts to apply to the court on behalf of the Commonwealth for the correction of an assessment by the local board in the same manner as is provided by law for an application by a taxpayer for the correction of an erroneous assessment.

"On this application to the court, whether it be or be called an appeal or an application to correct, or a motion, the procedure is the same and the effect is the same. The court acts in the matter as an original proceeding, on such evidence as may be adduced before it.

"The court being of opinion that the *appeal* allowed by Code, section 2263 (act March 16 1916 [Acts 1916, p. 471]) does not differ from but is the same as the right to apply to the court for a correction given by Code, section 2227 (act March 17, 1916 [Acts 1916, pp. 413, 419] an act one day later in time than the one embodied in Code, section 2263), it remains to consider whether the two year limitation upon such application prescribed by Code, section 2385, applies in the case of an application on behalf of the Commonwealth just as it does to such application by a taxpayer. The court is of the opinion that the limitation of time does apply.

"The application by the taxpayer referred to in the statute is the one allowed by section 2385. This is

shown by the act of March 17, 1915 (par. 7, p. 158), of which the act of March 17, 1916 (Code, section 2227), is an amendment. That act (March 15, 1915), by paragraph 7, gave the right to the taxpayer in terms to apply to the court under the provisions of Code, section 567 (now 2385), for correction of an assessment made by the local board, and by paragraph 6 of the same act, gave the right to the Commonwealth to make such application in the same manner as was provided by law for correction at the instance of a taxpayer.

"The limitation in time prescribed by Code, section 2385 (old Code 567), is annexed to the right, which exists only during the period mentioned. It is not such a statute of limitations as must be pleaded in order to make it available as a defense.

"It is argued on behalf of the Commonwealth that the word *manner* as used in the statute giving the right to the Commonwealth to apply to the court to correct an assessment by the local board, does not include the element of time. The court cannot agree with this view. The words 'may apply in the same manner', etc., mean the same as if the statute said 'as is allowed in other cases' or under the provisions of the statutes made and provided for the correction of erroneous assessments in other cases. Several authorities are cited by counsel for the plaintiff to sustain his contention that the word *manner* excludes the element of time, but words vary in their meaning according to circumstances and the connection in which they are used.

"In *Harris* v. *Doherty*, 119 Mass. 142, it was held that where a statute provided that trustee process should be served on the defendant and each of the trustees in the manner prescribed for the service of original summons, the word manner included the time as well as the form of service.

"And where a Wisconsin statute provided that the county board should fix the sheriff's salary in the same manner as salaries were fixed for other county officers, and the manner of fixing the other salaries was by resolution of the board before their election, the word manner was construed to include the element of time so as to require the fixing of the sheriff's salary before his election. *State* v. *McClure*, 91 Wis. 313, 64 N. W. 992.

"In the case at bar, it is to be observed that the same sentence which gives the right to the Commonwealth to apply for the correction of an assessment made by the local board, gives the same right to any taxpayer aggrieved, so that, if the time for such application to the court is unlimited as to the State, it must also be unlimited as to the taxpayer. This could not have been the intention of the statute.

"Looking to the whole scheme of legislation on the subject, and its history, it must be concluded that the time of two years was meant to apply to the right to apply or appeal to the court, from the action of the local board, and the application to the court in this case, being made in January, 1921, the court could not correct any of the assessments complained of.

"As to section 174 of the State Constitution. Whether that provision of the Constitution was meant to restrict the powers of the legislature or not, it is clear that it is not in any sense self executing. It does not make provision for assessing or create any assessing agency. There must be legislation to provide for these things, and this agency when created can only act as authorized by such legislation, and the court cannot make any assessment that the proper assessing officer could not make, and therefore could not go back further than the three years preceding the one in which the correction that is the assessment of omitted taxes is

made, and this period, if the court were at this time to undertake to correct the assessment made by the local board, and assess property of the defendant which was omitted in the years when it ought to have been assessed, would not include any of the assessments complained of; * * * There has been some discussion as to the meaning of the word ascertainment, and as to the year or date to which the 'ascertainment of property omitted from assessment when it ought to have been assessed, is to be referred. The language of the statute is: 'If the commissioner of the revenue * * ascertain that any * * property has not been assessed for any year of the three next preceding that in which such ascertainment is made,' it shall be his duty to list it, etc. Code, section 2332.

"The court does not understand that word ascertainment as here used to mean discovery merely, but it means in addition to that the official determination of the question of omission by the act of assessing. 'The ascertainment' from which the three years are counted back is the official ascertainment by the act of assessing, and the year of ascertainment is the year in which the previously omitted property is actually assessed. If the date of the discovery of the omission by the commissioner of the revenue were to be regarded as the year in which the ascertainment was made, then that date would be a matter at large, resting in the memory of witnesses and a subject of dispute, to be determined by the court or local board on oral testimony of witnesses whenever the question should arise. The year of the ascertainment is the year in which the omitted property is actually listed and assessed.

"To illustrate, if the omission occurred in 1915, and the omission was discovered in 1918, but the Commissioner did not list it in that year, but did list and assess

it in 1920, then the omission of 1915 is to be considered as ascertained in 1920, when the omitted property was actually listed and assessed, for in this year only was it ascertained definitely by official action.    *    *    *"

*Affirmed.*