# Richmond

## LEMMON TRANSPORT COMPANY, INCORPORATED v. COMMONWEALTH OF VIRGINIA, EX REL. &c.

June 18, 1951.

Record No. 3830.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Henry E. Ketner* and *William C. Miller,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General,* and *Henry T. Wickham, Assistant Attorney General,* for the appellee.

SMITH, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission denying an application of Lemmon Transport Company, Incorporated, hereinafter designated appellant, for a refund of gasoline tax paid to the Commonwealth of Virginia. Appellant is a Virginia corporation operating as a common carrier in interstate commerce, transporting petroleum and petroleum products in bulk in tank trucks from points in North Carolina, Tennessee and West Virginia to points in Virginia. Its main office is located at Marion, Virginia. All of the gasoline used in its operations was purchased in Virginia and the Virginia motor fuel tax paid thereon. In the year 1949, 530,411 gallons of gasoline were purchased in Virginia, on which the Virginia motor fuel tax of 6 cents per gallon was paid in accordance with Section 58-711 of the Code.

Section 58-628 of the Code imposes a road use tax equivalent to 6 cents per gallon on all gasoline or other motor fuel used on the highways of Virginia by a carrier of passengers or freight used in its operation within the State. For the year 1949 appellant used in Virginia 185,567 gallons of gasoline. The remainder of the gasoline purchased during that year was used in its business outside of the State of Virginia. On April 26, 1950, appellant paid to the State of North Carolina $5,577.82, the amount assessed by the State for the use of its roads for the calendar year 1949. On May 11, 1950, an application, by petition, was presented to the Corporation Commission under the authority

of Section 58-629 of the Code, seeking a refund of the tax paid on the gasoline purchased in Virginia in the year 1949 to the extent it was taxed in North Carolina on the use of the highways of that State, namely, $5,577.82. From the order of the Corporation Commission of October 19, 1950, denying relief, this appeal resulted.

The facts in the case are not in dispute. The proper construction to be placed on section 58-629 of the Code is the sole question presented by the assignments of error. More specifically, the question is, when does the ninety-day period of limitation contained in section 58-629 of the Code of Virginia begin to run?

It is the contention of the Commonwealth that since the application for a refund was not presented within ninety days from the end of any quarter in 1949, and not until the 11th of May, 1950, and, therefore, more than ninety days after the end of the quarter, the application was too late. The reply is that the ninety-day period in the statute begins to run from the date of the payment to the State of North Carolina, that is, April 26, 1950, that being within ninety days from the end of the quarter in which it could be shown that the tax had been paid to another State.

Section 58-629 of the Code is as follows:

"Every motor carrier subject to the tax hereby imposed shall be entitled to a credit on such tax equivalent to six cents per gallon on all gasoline or other motor fuel purchased by such carrier within this State for use in its operations either within or without this State and upon which gasoline or other motor fuel the tax imposed by the laws of this State has been paid by such carrier. Evidence of the payment of such tax in such form as may be required by, or is satisfactory to, the Commission shall be furnished by each such carrier claiming the credit herein allowed. When the amount of the credit herein provided to which any motor carrier is entitled for any quarter exceeds the amount of the tax for which such carrier is liable for the same quarter, such excess may under regulations of the Commission be allowed as a credit on the tax for which such carrier would be otherwise liable for another quarter or quarters or upon application within ninety days from the end of any quarter, duly verified and presented, in accordance with regulations promulgated by the Commission and supported by such evidence

as may be satisfactory to the Commission, such excess may be refunded if it shall appear that the applicant has paid to another State of the United States or the District of Columbia under a lawful requirement of such jurisdiction a tax, similar in effect to the tax herein provided, on the use or consumption of the same gasoline without this State, to the extent of such payment in such other jurisdiction but in no case to exceed the rate per gallon of the then current gasoline tax of this State. Upon receipt of such application the Commission shall proceed in the manner provided in §§ 58-1122 to 58-1128, except insofar as such sections may be inconsistent with some provision of this article, to grant or deny the same. Whenever any refund is ordered it shall be paid out of the highway maintenance and construction fund.''

This statute provides relief for the carriers who buy or pay taxes on gasoline or other motor fuel in Virginia, but who use the gasoline or other motor fuel in another State of the United States or the District of Columbia and pay the tax in such jurisdiction. Under the statute, if all of the gasoline purchased in Virginia is used in the State, then the credit for the payment would balance the road use tax. When more gasoline is bought in Virginia than is used in the State, then there is an excess credit. Since the appellant bought in Virginia more gasoline than it used in Virginia during the year 1949, it was entitled to an *excess* credit as defined in the statute as follows: ''When the amount of the credit herein provided to which any motor carrier is entitled for any quarter exceeds the amount of the tax for which such carrier is liable for the same quarter, such excess may * * *''. The taxpayer has two choices which he may make of the excess credit, first, ''* * * such excess may under regulations of the Commission be allowed as a credit on the tax for which such carrier would be otherwise liable for another quarter or quarters or [second] upon application within ninety days from the end of any quarter, * * * such excess may be refunded if it shall appear that the applicant has paid to another State * * *''.

The appellant had excess credit at the end of each quarter for 1949 and it might have secured a refund upon application made within ninety days from the end of any quarter if a similar use tax had been paid the State of North Carolina.

The purpose of the statute is to afford credit for the pay-

ment of motor fuel tax where the taxpayer purchases in Virginia more gasoline than is used on the roads of the State. Nevertheless, certain restrictions and conditions are attached to the right of refund. To be entitled to a refund on account of excess credit, the carrier must do two things: pay to another State on the use or consumption of the same gasoline, and file application within ninety days from the end of any quarter.

The meaning of the words "any quarter" used in the clause "* * * within ninety days from the end of any quarter * * *" becomes important. The same sentence of section 58-629, dealing with the subject of excess credit, uses the identical words "any quarter". It is plain that the words "any quarter" used in the time limitation provision of the statute mean the quarter for which the motor carrier has an excess credit. The words "such excess" are defined in the statute as the excess for that particular quarter. The amount of the excess is determined at the end of the quarter.

When, at the end of the quarter, the carrier finds there is an excess, he may choose whether he will apply the excess credit against taxes for another quarter or apply for a refund, if he has paid a use tax in another State.

The refund dealt with in the statute is not a refund of a road use tax paid the state of North Carolina, but is a refund of the gasoline tax paid to the State of Virginia, and the relief here sought is by reason of a Virginia statute authorizing the refund under the terms and conditions fixed therein. The Legislature provided how, under certain terms and conditions, a motor carrier may secure a refund of the gasoline tax paid, but in order to entitle the taxpayer to the refund there must be a compliance with the terms and conditions of the statute.

The construction contended for by the appellant, that the clause "within ninety days from the end of any quarter" means within ninety days from the end of the quarter in which it can be shown that the North Carolina tax has been paid, would make virtually meaningless the limitation written in the statute. The time limit within which the State of Virginia refunded taxes would be wholly dependent upon payment to another State. To accept such construction in refunding Virginia taxes would result in uncertainty and possibly an unanticipated drain on Virginia's treasury.

We are here dealing with a specific statute. The time

within which application must be made to secure relief is set forth in the statute. Except for the statute, there is no relief. The relief to the Virginia taxpayer is a matter of grace.

A similar question was raised in *Leesburg* v. *Loudoun Nat. Bank,* 141 Va. 244, 126 S. E. 196, in which this court in construing section 2389 of the Code of 1919 which required that application for correction of erroneous assessment be made to the court within two years from September 1st of the year in which the assessment was made, said:

"* * * The remedy, because it is based solely upon the statute, is also limited thereby. As is said in *Commonwealth* v. *Deford Co.,* 137 Va. 542, 551, 120 S. E. 281, 284. 'The very right itself is accorded by the statute. As that statute is relied on, and the proceeding can be maintained only in accordance therewith, the limitation of time thereby prescribed is so incorporated in the remedy given as to make it an integral part of it, and hence makes it a condition precedent to the maintenance of the proceeding. It is a special limitation prescribed by the same statute which creates the right.* * *'

"We think the language of the statute is conclusive on this point and that the application must be actually made, and made directly to the court, within two years from September 1st of the year in which the assessment was made. * * *".

Since the application was not made within ninety days from the end of any quarter in 1949, in which excess credits had accumulated, it was too late.

The order of the State Corporation Commission is, therefore,

*Affirmed.*