## Richmond

COMMONWEALTH OF VIRGINIA, EX REL., ETC.

v.

BALTIMORE TANK LINES, INC., ET AL.

November 26, 1980.

Record No. 800817.

Present: I'Anson, C.J.; Carrico, Harrison, Cochran, Poff and Compton, JJ.

*John G. MacConnell, Assistant Attorney General (Marshall Coleman, Attorney General; Kenneth W. Thorson, Assistant Attorney*

General; Nancy J. Balzer, Assistant Attorney General, on brief), for appellant.

Alexander Wellford; Glenn Richardson (Lewis S. Minter; Edward C. Tosh; Christian, Barton, Epps, Brent & Chappell, on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this tax case, appealed of right by the Attorney General of Virginia on behalf of the Commonwealth, we review the action of the State Corporation Commission in allowing a tax refund to an interstate motor carrier of property.

There are two distinct statutory taxation plans involved in this controversy; one deals with Virginia's motor fuel tax and the other with this State's road use tax. Under the Motor Fuel Tax Act of Virginia, Code §§ 58-686 to -730.4, all motor fuel is taxed at the pump at the time of purchase, regardless of the use to which the fuel will be put. Insofar as pertinent to this case, the rate of taxation was nine cents per gallon (increased to 11 cents on July 1, 1980). § 58-711. The motor fuel tax is administered by the Division of Motor Vehicles. See § 58-713.

Code §§ 58-627 to -637 provide for payment by a motor carrier of a road tax calculated on the amount of fuel used in its operations within Virginia. Although this road use tax is based upon mileage travelled, it is computed according to the number of gallons used in travel within the State. During the period in question, the road use tax was imposed at the rate of 11 cents per gallon (increased to 13 cents on July 1, 1980). Code § 58-628. This tax is administered by the State Corporation Commission. See § 58-633.

The foregoing different schemes of taxation become interrelated through Code § 58-629. That statute is the focus of this appeal and, during the time pertinent here, provided as follows:

§ **58-629. Credit for payment of motor fuel tax.**—Every motor carrier subject to the tax hereby imposed shall be entitled to a credit on such tax equivalent to nine cents per gallon on all gasoline or other motor fuel purchased by such carrier within this State for use in its operations either within or without this State and upon which gasoline or other motor fuel the tax imposed by the laws of this State has been paid by such carrier. Evidence of the payment of such tax in such form as may be required by, or is satisfactory to, the Commission shall be furnished by each such

carrier claiming the credit herein allowed. When the amount of the credit herein provided to which any motor carrier is entitled for any quarter exceeds the amount of the tax for which such carrier is liable for the same quarter, such excess may under regulations of the Commission be allowed as a credit on the tax for which such carrier would be otherwise liable for any of the four succeeding quarters; *or upon application* within one hundred and eighty days from the end of any quarter, duly verified and presented, in accordance with regulations promulgated by the Commission and supported by such evidence as may be satisfactory to the Commission, *such excess may be refunded if it shall appear that the applicant has paid to another state under a lawful requirement of such state a tax, similar in effect to the tax herein provided, on the use or consumption in said state of gasoline or other motor fuel purchased in Virginia, to the extent of such payment to said other state,* but in no case to exceed the rate of nine cents per gallon.

The Commission shall not allow such refund except after an audit of the applicant's records and shall audit the records of an applicant at least once a year. Such refund may be allowed without a formal hearing if the amount thereof is agreed to by the applicant. Otherwise, a formal hearing on the application shall be held by the Commission after notice of not less than ten days to the applicant and the Attorney General. Whenever any refund is ordered it shall be paid out of the highway maintenance and construction fund.[1] [Emphasis added.]

Under the above statute, Virginia allows motor carriers to reduce the amount of road tax due (gallons consumed) by the amount of fuel tax paid to Virginia (fuel purchased). Thus, motor fuel tax payment operates to offset road use tax liability.

When the credit for fuel purchased exceeds road use liability for gallons consumed, an excess of credit arises. In such a situation, Virginia allows either a carry-over of credit for "succeeding quarters," or a refund of the excess. A refund is permitted if the carrier has paid a similar road use tax to another state "on the use or consumption in said state of gasoline or other motor fuel purchased in Virginia." Thus, as pertinent here, the statute has two stated requirements for refund of excess credit: (1) that the carrier has "paid" a road use tax to another state on the consumption of Virginia-purchased fuel, and (2)

---

[1] Effective July 1, 1980, the amount of the credit was increased to 11 cents per gallon.

that the other state's road use tax is "similar in effect" to Virginia's road use tax. The parties agree that the road use tax of Maryland, the other state directly involved here, is "similar in effect," within the meaning of Virginia's statute.

Appellee Baltimore Tank Lines, Inc., based in Glen Burnie, Maryland, transports petroleum products in Virginia, Maryland and Pennsylvania. During the period in question, Baltimore owned 43 diesel-powered tractors, two of which (referred to as the "dedicated tractors") were used in the transportation of petroleum products between Fairfax, Virginia, and various points in Maryland. Thirty-nine tractors operated within Maryland and two others moved black oil between Maryland and Pennsylvania. Fuel for the dedicated tractors was purchased entirely from sources in Virginia and their fuel consumption was equally divided between Virginia and Maryland.

During the period in question, Baltimore paid under Maryland law a motor fuel tax of nine cents per gallon on fuel purchased in that state. Md. Ann. Code art. 56, § 136 (1957). The carrier was also liable for a Maryland road use tax of nine cents per gallon calculated on the amount of fuel consumed on the highways of Maryland. *Id.,* art. 81, § 413. The road tax liability was computed by adding the Virginia-purchased fuel used by the two dedicated tractors while travelling in Maryland to the Maryland-purchased fuel used by the remainder of the fleet in its travel within that state. *Id.* Under Maryland law, the carrier was entitled to a road tax credit on all fuel purchased within that state "equivalent to the rate per gallon of the motor fuel tax in effect when such fuel was purchased." *Id.,* art. 81, § 414.

Baltimore paid more Maryland fuel tax than was necessary to cover its Maryland road tax liability because the two "black oil" tractors operated on fuel that was purchased exclusively in Maryland but consumed partly in Pennsylvania. Thus, the carrier received an excess Maryland credit for its fuel tax paid in Maryland and, upon application, was granted by Maryland a refund of that excess.

Under the Virginia taxation framework, the audit conducted by the State Corporation Commission's former Division of Motor Carrier Taxation showed that Baltimore had quarterly credits in Virginia fuel taxes for the quarters ending March 31, 1976, June 30, 1976, and September 30, 1976. Because of the carrier's method of reporting its operations to Maryland, it also received fuel tax credits in Maryland for the same quarters.

Baltimore then applied to the Commission's Division of Motor Carrier Taxation for a refund of the Virginia excess credits, under

Code § 58-629, contending that its discharge of the Maryland road tax liability was actually "payment" to that state. The Division denied the application, taking the position that Baltimore had not "paid" an additional tax to Maryland for the quarters in question.

Subsequently, Baltimore initiated this proceeding seeking a formal hearing before the Commission. Upon consideration of a stipulation of facts, the testimony of one witness and two exhibits, the Commission ruled, with one dissent, that Baltimore had "paid" a similar road use tax to Maryland and was entitled to a refund in the amount of $1,967.43 for the period January 1, 1976 through September 30, 1977. The Commission found from the evidence that Baltimore used fuel purchased in Virginia, on which it paid a Virginia fuel tax, in vehicles travelling over Maryland highways. The audit identified the Virginia fuel and determined that such fuel was used in two identified vehicles on identified mileage in Virginia and Maryland.

The majority reasoned that if Baltimore had not been charged by Maryland with $1,967.43 by virtue of travel of the two designated vehicles within that state, the carrier's refund from Maryland would have increased by that amount. Stated differently, Baltimore was charged by Maryland with $1,967.43 as a road tax for fuel consumed over miles travelled by the designated vehicles in Maryland. That amount, plus amounts assessed for fuel consumed over miles travelled by the balance of Baltimore's fleet in Maryland, equalled its total road tax liability. Such liability was exceeded by a fuel tax credit, resulting in a refund of the "excess" in Maryland. Therefore, although Baltimore made no affirmative payment of the $1,967.43 amount in question because of the excess, it was nevertheless assessed that amount as part of its road tax liability to Maryland. Thus, the Commission held the carrier in effect "paid" the disputed amount for use in Maryland of fuel purchased in Virginia, within the meaning of § 58-629.

The dissenting Commissioner shared the view of the Commission Staff that Baltimore had not made actual "payment" to Maryland.

The main issue on appeal is whether the Commission erred in determining, under § 58-629, that the carrier "paid" a road tax to Maryland arising from the use, in Maryland, of two identified vehicles burning Virginia-purchased fuel, the Maryland tax being "similar in effect" to the Virginia road tax.

The Attorney General contends the Commission disregarded the plain language, legislative history and past administrative interpretation of § 58-629 in ruling in favor of the carrier. The argument pri-

marily focuses on the meaning of "paid" and "payment." Relying on various rules of statutory construction, the Attorney General asserts those words must be read to require a "positive payment," that is, an actual transfer of cash or its equivalent. Arguing in support of the Commission's ruling, Baltimore Tank Lines as well as counsel for the Commission assert that application of an available credit so as to discharge a liability is a "payment" within the meaning of the statute. We agree with the carrier and the Commission.

The evidence shows that when present § 58-629 was originally enacted, Acts 1946, ch. 270 at p. 458, it was considered a "persuasive statute" designed to encourage motor carriers to purchase their motor fuel in Virginia commensurate with their use of Virginia highways. *See* Acts 1942, ch. 108; Acts 1940, ch. 198. Under the statute, as we have said, in return for buying tax-paid fuel in this State, the carriers are allowed credit for the tax against their liability for Virginia road use tax. Manifestly, as part of the statutory plan, the General Assembly intended that, insofar as interstate operations were concerned, relief would be granted through the credit and refund provision against taxes by two states on the use of the same Virginia-purchased fuel. *See Lemmon Transport Co.* v. *Commonwealth,* 192 Va. 416, 419-20, 65 S.E.2d 537, 538-39 (1951). We think this legislative intention is clear from the express language of the statute. Consequently, the enactment should be applied in a manner that will give effect to, and not defeat, that intent. *Temple* v. *City of Petersburg,* 182 Va. 418, 422-23, 29 S.E.2d 357, 358-59 (1944).

As we shall demonstrate, an application of the statute as urged by the Attorney General would frustrate the legislative purpose under the circumstances of this case, while the decision of the Commission will promote that purpose. When, as here, the taxpayer which seeks a Virginia refund has received an excess of credits in connection with another state's assessment of road use taxes, there would be double taxation under the Attorney General's restrictive interpretation of the statutory terms "paid" and "payment"; the broader meaning ascribed to those words by the Commission will avoid such a result.

Consistent with the legislative intention, "paid" means "to discharge indebtedness for." Websters Third New International Dictionary 1659 (1971). "Payment" means "[a] discharge of an obligation or debt." Black's Law Dictionary 1016 (5th ed. 1979). As the Commission majority noted in its opinion:

Had the carrier not been charged by Maryland with $1,967.43 by reason of the movements of these two vehicles in that state its

refund from Maryland would have increased by that amount. The applicant can only be said to have discharged an obligation and paid this amount to Maryland for the use, in Maryland, of fuel which was purchased in Virginia.

The Commission's decision to accept a meaning of "paid" and "payment" which connotes something more than mere transfer of cash or the equivalent avoids taxation of the same fuel in both Virginia and Maryland when, as here, the taxpayer has shown that it has incurred and satisfied a road tax liability to another state on the same motor fuel that was fuel-taxed in Virginia.

■ The Attorney General advances two additional arguments; neither has merit. He contends the Commission erred by allowing the carrier to segregate a portion of its fleet so as to receive a refund under § 58-629. There has been no attempt by the carrier to fragment its operations for separate consideration by the Commission. To the contrary, the carrier's total operations and motor fuel purchases within Virginia form the basis for the taxpayer's refund request.

■ Additionally, the Attorney General takes the rather novel position that there was no payment of a Maryland road use tax in this case because there was no liability to pay, such liability being eliminated by the application of excess Maryland motor fuel credits. Not only is this contention contrary to a stipulation of fact that Baltimore incurred such a tax liability,[2] it is an assertion that by overpaying a tax the carrier never paid any tax. As the taxpayer reminds us, this is a Catch-22 proposition[3] and we reject it.

For these reasons, we find no error in the action of the Commission and the order appealed from will be

*Affirmed.*

---

[2] "Stipulation 4. The State of Maryland charged Baltimore Tank Lines under its Road Tax and Motor Carrier Statute with the mileage traveled in Maryland by the dedicated tractors in computing Baltimore Tank Lines's motor fuel road tax liability to Maryland for the time period in question."

[3] "There was only one catch and that was Catch-22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to." Heller, Joseph. *Catch-22*, p. 46. Simon and Schuster, New York, 1955.