## UNITED STATES FIDELITY & GUARANTY CO. v. UNION BANK & TRUST CO. et al.

### (Circuit Court of Appeals, Sixth Circuit, December 7, 1915.)

#### No. 2640.

**1.** BANKS AND BANKING ⬨⟳130—DEPOSITS—TRUST FUNDS—LIABILITY OF BANK FOR MISAPPROPRIATION.

Where trust funds are deposited in a bank, which has knowledge of their character, if it obtains payment of a debt from the depositor personally to itself from the deposit, or affirmatively and intentionally aids him in wrongfully appropriating any part of the fund to his own use, it becomes liable in equity therefor to the beneficiaries of the trust.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. ⬨⟳130.]

**2.** BANKS AND BANKING ⬨⟳130—DEPOSITS—TRUST FUNDS—LIABILITY OF BANK FOR MISAPPROPRIATION.

The bank is not relieved from such liability on account of money received on its own debt by the fact that the depositor had funds of his own mingled in the deposit, but accepts the payment at its peril of having to refund if the trust deposit is thereby depleted.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. ⬨⟳130.]

**3.** BANKS AND BANKING ⬨⟳130—DEPOSITS—TRUST FUNDS—LIABILITY OF BANK FOR MISAPPROPRIATION.

Nor is the bank protected from liability by the fact that the money of numerous beneficiaries is mingled in the deposit, which is added to from many sources and drawn against for many purposes until the identity of each owner's part is lost. In such case the amount wrongfully taken from the fund must stand to them in the same relation as the remainder does, and the liability is to them as a class, and where there is no right of preference between them, and in the absence of clear proof that the money of any particular owner remains, they are entitled to share pro rata in the fund remaining, and in such money as may be recovered.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. ⬨⟳130.]

**4.** SUBROGATION ⬨⟳7—SURETY OF OFFICER—SUBROGATION TO RIGHTS OF BENEFICIARIES OF TRUST FUNDS.

Where in such case the depositor was a public officer and the beneficiaries, instead of pursuing their remedy against the bank, recover their loss from the surety on his official bond, the right to bring the action passes to the surety under the general principles of subrogation, and by what amounts to an equitable assignment, but subject to any disability which affected the beneficiaries whose claims were paid.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. ⬨⟳7.]

⬨⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. LIMITATION OF ACTIONS ☞66—ACCRUAL OF RIGHT OF ACTION—ACTION TO RECOVER BANK DEPOSIT.

Limitation begins to run in favor of a bank against the claim of beneficiaries of a trust fund deposit on demand and refusal of payment, or when the claimants have notice that the bank will not pay, and where the depositor was a public officer, an official report of a committee, which was a matter of public record, that he had drawn out practically all of the fund is equivalent to such notice.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 353–375; Dec. Dig. ☞66.]

6. SUBROGATION ☞32—EXEMPTION IN FAVOR OF STATE—SUBROGATION OF SURETY PAYING CLAIM.

Where the claim of a state against a public officer for taxes collected was not subject to limitation, the exemption inures to the benefit of a surety who pays the claim and becomes its assignee by subrogation.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 92–95; Dec. Dig. ☞32.]

7. BANKS AND BANKING ☞130—DEPOSITS—TRUST FUNDS—SUIT TO RECOVER.

Where by the decision of the Supreme Court of a state the state had a first lien on funds in the hands of a public officer for state taxes collected by him, and his surety was required to pay the state's claim, a suit by the surety as subrogee against a bank in which the officer had deposited his official funds, and from which they were wrongfully withdrawn, is one to restore the fund wrongfully diverted from the office of its principal, and it is not essential to recovery to identify the state's money and trace it in specie into the deposit.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 319–325, 327; Dec. Dig. ☞130.]

8. BANKS AND BANKING ☞154—DEPOSITS—TRUST FUNDS—SUIT TO RECOVER.

While the liability of a bank on account of its participation in the misappropriation of a deposit, consisting of trust funds belonging to numerous beneficiaries as a class, is to such beneficiaries as a class, a decision of a state court that the state, as one of such beneficiaries, was entitled to first lien on the funds and priority of payment therefrom so far segregates its claim from the others that a separate suit may be maintained thereon.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 502–512, 515, 516, 518–533; Dec. Dig. ☞154.]

9. SUBROGATION ☞28—SURETY—SUBROGATION TO RIGHT OF ACTION OF OBLIGEE—PARTIAL PAYMENT.

The right of a surety on a bond to be subrogated for the obligee in a right of action against one wrongfully causing the liability is founded on payment by the surety to the obligee, and does not come into existence except on full payment of the loss indemnified against, since the cause of action cannot be split.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 51–59; Dec. Dig. ☞28.]

Appeal from the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Suit in equity by the United States Fidelity & Guaranty Company against the Union Bank & Trust Company and others. Decree for defendants, and complainant appeals. Reversed.

Rainey was a clerk of the courts at Nashville, and the Fidelity & Guaranty Company (hereafter called the guaranty company) was surety on his official bonds. He kept his official funds on deposit with the Union Bank & Trust

Company · (hereafter called the bank), in an account in the name of "Walter S. Rainey, Circuit Court Clerk," and from which withdrawals were commonly made by checks signed "Walter S. Rainey, Clerk." These official funds consisted of judgments collected, delinquent taxes paid, and officers' and trustees' fees and costs paid. He would be entitled to take for himself out of such funds his own costs and commissions. He also deposited in the same account his private funds, and he had no other bank account. In January, 1901, it developed that as clerk he was "short" about $25,000. Because of its liability as surety, the guaranty company was compelled to pay about $18,000 to or for the beneficial owners of the funds which the clerk should have had on hand. This result was brought about by the decree of the Supreme Court · of Tennessee finding and holding that, in round numbers, the total shortage was $25,000, of which $3,300 was due the state, $3,300 was due to the county, and $8,700 to the city for taxes received by Rainey, making a total of $15,000 for taxes, and $10,000 was due to individuals for costs, fees, judgments, etc.; that the guaranty company was liable for the full amount of two bonds aggregating $15,000 and interest, or $17,000, and for $1,300 and interest upon another bond. Apparently the $1,300 consisted of items which would be paid in full out of the judgment, leaving $8,700 of the individual claims standing against the $15,000 bonds. The decree directed that the fund of $17,000 be paid into court; that the state had priority and should be paid therefrom its $3,000 and interest in full, but that the county and city had no priority; and that the remainder of the fund, about $13,500, should be prorated among the remaining $21,000 of claims without distinction between the county, city, and individuals, thus indicating payments of about $2,100 for the county, $5,700 for the city, and $5,700 for the individuals. Having made payment as thus ordered, the guaranty company, in May, 1909, stating the necessary diverse citizenship to give jurisdiction, filed its bill in the court below against the bank, alleging that, with knowledge of the trust character of the deposit, the bank had negligently permitted Rainey to use large portions of that deposit for his private purposes, and also had received from him, out of the trust deposit, about $6,700 to be applied upon payment of his personal obligations to the bank. It was the theory of the bill that, upon these facts, a cause of action arose against the bank in favor of the beneficial owners of the fund, and that by the payments made pursuant to its bonds, the guaranty company had become equitably subrogated to these rights. It therefore asked an accounting against the bank, and claimed such an adjustment of the various funds and interests as to entitle it to a decree for about $12,-000. The trial court held that there was no such conduct by the bank as would have given rise to an action on account of sums checked out of the fund to Rainey himself or to his private creditors, but that the bank would have been liable for the sums which it received for itself out of this deposit; that all the individual claimants to the trust fund would have been barred by the statute of limitations before this bill was filed, and that so far as the guaranty company claimed by subrogation their rights of action, it, also, was barred; that the state, county, and city, on their claims for tax money in the clerk's hands, would have escaped the bar of the statute; and that the guaranty company, claiming by subrogation to these rights, likewise escaped, but that the tax money was not sufficiently traced into the bank deposit, and, hence, even as to this part of its claim, the guaranty company must fail. From a decree dismissing the bill, the guaranty company appeals, and, by the assignments of error, as limited by the printed brief, raises two questions: (1) That the bank should have been held liable for a certain sum of $2,000 checked out by Rainey for his personal uses; (2) that the presence in the bank deposit of the state, county, and city tax money sufficiently appeared so as to justify a decree in favor of the guaranty company to the extent of the fund diverted to the bank. Obviously, both propositions involve the rightfulness of the above recited steps which lead to the existence of any liability in favor of plaintiff.

C. T. Boyd, of Nashville, Tenn., for appellant.
J. J. Vertrees, of Nashville, Tenn., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The official funds on deposit were not, as between the clerk and the bank, a trust fund; but as between the clerk and the beneficiaries, the fund was largely or wholly made up of trust moneys; and this case must be approached by way of the proposition that if the bank, out of this fund, either satisfied its debt against the clerk personally, or affirmatively and intentionally aided him in wrongfully appropriating it to his own use, a liability therefor accrued in equity against the bank in favor of the beneficiaries. We think this proposition follows from the decision in Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. True, in that case, Mr. Justice Matthews called attention to the fact that the court was not dealing with a voluntary application of the fund by the check of the depositor, but with an attempt to enforce a banker's lien; but we do not see a controlling distinction between the two situations, as the former has developed in this case. Once admitting that the fund belongs in equity to the beneficiary and that the bank knows this, it seems clear that the bank can get no better right against the real owner from the fact that the depositor, trustee, colludes with the bank in the wrongful application.

[2] 2. From such a liability, on account of a bank debt paid, the bank could find no protection in the fact that it acted on the mistaken supposition that mingled in the deposit was enough money belonging to the depositor to satisfy his check. When such a joint fund is drawn upon for a payment to the bank to discharge a mere personal debt to it, the bank takes the money at its peril of having to refund, if in fact the trust deposit is thereby depleted. This is the teaching, though not the holding, of the case in 104 U. S. The refund works no injury to the bank; it has no equity equal to that of the real owner.

[3] 3. Where there is a single beneficiary of such a fund, the matter is simple; it becomes more complex when there are many beneficiaries. In such case, while their respective, mutual rights are several, yet the liability in chief must be to them as a class. There may be instances where the money of one person can be traced through the deposit into the diversion, but that must be unusual. The typical case is where, as here, money belonging to numerous persons is mingled in one deposit, which is added to from many sources and drawn against for many purposes until the identity of each owner's part is hopelessly lost; and as between beneficiaries whose rights are of equal rank, this confusion cannot be cleared by any presumption that withdrawals must be charged against one rather than another. This loss of specific identity ought not to be a protection for the wrongful appropriator. It is enough for the bank to know that the deposit, as a mass, is charged with a trust in favor of beneficiaries, as a class. The bank cannot be concerned with their equities as between themselves, as long as it will not be charged twice. An amount wrongfully taken by the bank from such a fund must stand to the beneficiaries in the same relation as the remainder does; and we cannot doubt that those whose money had come into the clerk's office would share pro

rata in whatever official fund in cash or in bank might remain, in the absence of any right to preference or clear proof that the specific and identifiable money of one claimant remained.

[4] 4. If the beneficiaries in such fund, instead of pursuing the right of action we have been discussing, recover their loss from the surety upon the official bond, the right to bring the action against the bank passes to the surety under the general principles of subrogation and by what amounts to an equitable assignment. Travelers' Co. v. Gt. Lakes Co. (C. C. A. 6) 184 Fed. 426, 107 C. C. A. 20, 36 L. R. A. (N. S.) 60, and cases cited; American Co. v. National Bank, 97 Md. 598, 55 Atl. 395, 99 Am. St. Rep. 466.

[5] No matter what the form of the assignment, legal or equitable, the assignee cannot take a better right than the assignor had; and so we come to the defense of the statute of limitations. This defense may be of varying effect as against the beneficiaries of the fund, as between: (1) Individuals; (2) the state; and (3) the city and county. It would be strongest as against the individuals. It is urged that this is, in effect, a suit to recover a deposit, and that such an action does not accrue, and therefore the statute does not begin to run, until the depositor has demanded payment from the bank and the bank has refused. Morse on Banks (4th Ed.) § 322, pp. 587–591. Mr. Morse, however, states that certain acts by the bank will dispense with the necessity of demand and refusal, among which acts are: (1) Notification to the depositor that his claim will not be paid, and (2) rendering by the bank to the depositor an account in which it claims the money as its own. It would seem that the second exception is included within the first, but either the first or the second is fairly satisfied by the facts of this case. As early as January, 1901, by an official report to the chancery court by a committee theretofore appointed, it was made a matter of public record that the clerk had less than $25 in his official bank account in place of the $25,000 which he should have had. This was, in effect, a statement that Rainey had withdrawn from the bank all the sums now in question. In the natural course of events, the substance of this report must have soon become known to all beneficiaries of the fund. It fairly put them on notice that the bank would not pay over the sums the second time and on inquiry whether those who had received the money were liable to pay it back. The statute began to run against all individual beneficiaries, at the latest, on the expiration of reasonable time for this notice to take effect. This suit was not begun until 1909. The Tennessee statute is six years. The federal courts of equity generally enforce the state statutes (Kentucky Co. v. Kentucky Co. [C. C. A. 6] 187 Fed. 945, 948, 110 C. C. A. 93); and we are satisfied that the individual beneficiaries are barred.

It results that if there are beneficiaries not barred, but who may be treated as surviving the statute, the survivors may receive a larger dividend than otherwise would happen. Manifestly this could not be so if the money of each beneficiary could be identified, or if otherwise his right was wholly several; but we see no reason why distribution of such a fund as we are now considering should not be made

to the claimants whose claims exist at the time of distribution and be continued until their claims are satisfied. The wrongful possessor of the fund is not prejudiced by being compelled to yield what he does not own to those who have a good title, and if it appears that there are no other claimants entitled to share. True, a decree for such payment does not bind those who are not parties to the record; but it frequently happens that rights of the parties must be determined as between themselves without an adjudication which will bind others, and in such situations, the question whether all substantial rights involved are held by parties to the record must be determined by the evidence in the case, and not by surmises as to what might be made to appear in some other case.

[6] 5. It is clear enough that, if the state of Tennessee had brought the action to recover on account of the $3,000 of state taxes in the clerk's hands, the statute of limitations would have been no defense; but does this exemption from the statute of limitations, existing for the benefit of the state, inure to the benefit of one who has become subrogated to the state's right of action? We must think that it does; though counsel have not found, nor have we, any decisions directly upon that subject, excepting American Co. v. National Bank, supra, in which, on page 607 of 97 Md., 55 Atl. 395, 99 Am. St. Rep. 466, the Supreme Court of Maryland expressly decided that the assignee by subrogation took the benefit of the state's exemption. The principle is the same as in the leading case of Lambert v. Taylor, 4 B. & C. 138. Here it was held that when the title to a chose in action vested in the sovereign by law upon the owner's suicide and where after a time it was transferred by the Crown to the representative of the deceased, the statute did not run during the Crown's ownership. This case was cited with apparent approval in United States v. Nashville Co., 118 U. S. 120, 126, 6 Sup. Ct. 1006, 30 L. Ed. 81. See, also, Hunter v. United States, 5 Pet. 173, 182, 8 L. Ed. 26, holding that the same right of priority which belongs to the state attaches to the claim in the hands of a surety who has paid the debt to the state; the analogy between a right of priority and a right of exemption seems complete.

We think the conclusion of exemption is required by considerations both of fairness and of public policy. The primary security held by the state, in the form of a right of action or some other form, may be ample to protect, through subrogation, a secondary surety, and the latter may assume the liability relying upon his own right to resort to the primary security, if he is himself compelled to pay, but he can do nothing by way of such resort until he is himself damnified; and it is manifestly unjust that this secondary surety should find the statute of limitations no defense in his favor when he is required to pay, but a successful defense against him when he exercises his right of subrogation. So, too, it must be true that if a surety under such circumstances is unable to take anything effectively through subrogation, he would make payment to the state only when compelled, and the public interests would suffer.

The case of United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121, is not persuasive to the contrary. The holding was

that the exemption from the statute of limitations will not be allowed when the state, although plaintiff on the record, is only a nominal party having no actual interest. The real purport of this decision is that the form of the record will not determine whether exemption may be claimed, but that the court will look back to the substantial basis of exemption; and it carries more or less implication that if a suit was brought by an individual for the use and benefit of the state, the exemption could be claimed. The instant case is only one step further away in this direction. Instead of suing for the use and benefit of the state, the plaintiff takes over and pays for the state's claim and then sues. In the Beebe Case, there never had been any real claim by the United States or any right of action in which it had a real interest.

We conclude, therefore, that to the extent of the $3,000 of the tax money and interest thereon which it had paid over for the benefit of the state, the guaranty company was not barred by the statute of limitations and (unless for the matters hereafter mentioned) was entitled to recover from the bank on account of the bank's appropriation of this official fund to the bank's debt.

[7] 6. Considering, now, the character of the demand or right of action in favor of the state, and which constitutes part of the guaranty company's present demand, we must find the basis on which it rests. Does it depend upon the theory that the taxpayer's money deposited with the clerk for transmission to the state is a trust fund which is now to be recovered from the bank by tracing into its hands and by identification in specie or through substitution? If this is the true theory, then we must decide the issue upon which the court below acted. We think the more satisfactory basis is found in the preferential right in the state, as declared by the Supreme Court of Tennessee in the early stages of this controversy. It was decreed that out of the total amount paid by the guaranty company, the state was entitled to preference, and must be paid in full, but that the county and the city had no such right, and must take equal rank with individual claimants. The opinion of that court is reported in Fidelity Co. v. Rainey, 120 Tenn. 357, and on pages 399–405, 113 S. W. 397, it is shown that the priority under the bonds was rested on the sovereign's common-law right of preference against a debtor's assets. The fund recovered from the guaranty company was only a substitute for the fund which should have been in the clerk's office, and, interpreting the Supreme Court opinion as we do, its necessary effect is to say that for this tax money the state had a preference or a first lien upon the fund in the clerk's office. The present action against the bank operates in substance and in effect only to restore to the fund in the clerk's office an amount which should not have been taken away, and the restored fund must be subject to the same priority as the original. It follows that a wrongful diversion of the fund would take full effect as an injury to the rights of the state before it would take effect at all as an injury to the rights of any other beneficiary in the fund—and quite regardless of whether or not the specific state money had come into the fund—assuming, as was true in this case, that there was no proof to show

the money in the fund to have been the identifiable property of any one except the state. Accordingly, we conclude that, even though it should be conceded that the proof fails to trace the state money to the bank, that failure would not defeat the state's right to recover.

[8] 7. The nature of the state's claim must also be determined, as between a claim which is independent and severable and one which is only a fraction of a general and indivisible right of action belonging to beneficiaries as a class. If it is of the former character, it may stand alone and be independently transferred by subrogation or by any other kind of assignment; but if it be only a portion of the unitary action inuring to all beneficiaries, any attempt to transfer it separately must fail, since a cause of action cannot be split. Travelers' Co. v. Great Lakes Co., supra. And see Turk v. R. R. Co. (C. C. A. 6) 218 Fed. 315, 134 C. C. A. 111. Here, again, we must think that the adjudged priority is sufficient to give the state's claim a separate identity. Giving full force to the idea that each beneficiary claims, not independently, but as a member of a class, it is yet true that the claim of the state stands apart. The general fund is at all times charged with a first lien in favor of the state, and an injury to the fund is an injury to that lien. It is true that the injury to the lien comes through the injury to the fund; but the right of the lienholder to redress is so far independent that we cannot think an action brought by him could be defeated because subordinate lienholders or beneficiaries were not joined. A court of equity might well direct them to be joined, but they would not be indispensable parties. It follows that the guaranty company is entitled to recover against the bank the amount which it paid on account of the state tax money.

[9] 8. The claims of the county and city present another question, not made below, but apparent on the record; and, at our request, counsel have filed briefs thereon. The right of a surety on a bond to be subrogated for the obligee in a right of action against one wrongfully causing the liability is founded on payment by the surety to the obligee, and it does not come into existence except upon full payment of the loss indemnified against. This is because subrogation is of an equitable character, and the surety cannot be permitted to take away from the obligee, to the latter's prejudice, securities or rights in which he is still beneficially interested. Sheldon on Subrogation, § 127; Musgrave v. Dickson, 172 Pa. 629, 632, 33 Atl. 705, 51 Am. St. Rep. 765. In this case, the loss of the state was $3,000, and the guaranty company paid it in full, but the loss of the city was $8,700, and the guaranty company has paid on account of it only $5,700 (as above estimated). This leaves the city with an unpaid claim of $3,000 against the clerk and the clerk's fund, and the right of action which the city originally had against the bank it was entitled to enforce and collect and to apply the full sum collected upon its claim. The city thus had, in a very proper sense, two securities to which it might resort and upon both of which it might realize in full until its whole claim was satisfied; these securities being its right of action against the bank and its claim against the guaranty company on the bond. Between these two securities, there was no such relative rank as could permit the guaranty company

to pay the part of the claim for which it was liable and then indemnify itself by demanding the security which the city held for the remainder of the city's claim. The same situation existed as to the county; and, when it is thus stated, it seems to us quite evident that the interests of the city and county in this right of action against the bank did not pass by subrogation to the guaranty company, but that the interest of the state therein did so pass.

It is said that only that creditor a portion of whose debt remains unpaid after the surety has paid all he is bound for can raise the objection that the surety may not be subrogated to the creditor's securities and remedies until the creditor has been paid in full, and cases are cited supposed to be to this effect. These are probably all distinguishable from the general principle above stated, because the creditor had agreed to the substitution (Motley v. Harris, 1 Lea [Tenn.] 577), or because there was a security common to several distinct debts, and the surety, having paid one of these debts, claimed corresponding rights in the security (Nettleton v. Ramsey, 54 Minn. 395, 56 N. W. 128, 40 Am. St. Rep. 342), or because of some other analogous reason. That the city and county have not objected to the subrogation claim of the guaranty company is perhaps explained by the fact that the record shows no notice to them of any such claim. At any rate, the cause of action existing in favor of the city or of the county was a single, indivisible cause of action, even if it existed separately from the rights of individual beneficiaries, and it could not be split up into two actions, with or without the consent of the city or county.

By the foregoing conclusions, it becomes immaterial whether the rights of the city and county were barred by the statute of limitations, or whether any liability originally accrued on account of the $2,000 payment, or whether the amount wrongfully diverted by the bank was somewhat more than $5,000. The guaranty company can recover only the amount of the state tax claim and interest, and to cover such a claim the amount which the bank concedes that it applied to its own debt is large enough.

The decree below is reversed, with costs, and the case is remanded for further proceedings consistent herewith.