FIDELITY & DEPOSIT CO. OF MARYLAND *et al.*, COMPLAINANTS, APPELLANTS, *v.* FIRST NATIONAL BANK OF CHATTANOOGA, *et al.*, DEFENDANTS, APPELLEES.

(*Knoxville*, September Term, 1932.)

Opinion filed December 17, 1932.

J. ROY HICKERSON, and MILLER, MILLER & MARTIN, for complainants, appellants.

WILLIAMS & FRIERSON, for defendants, appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainants, as sureties on the bond of William A. Whittice, County Court Clerk of Hamilton County, made good his default by paying to the State $58,500. It is shown by the bill that this payment was made July 16, 1925. On March 23, 1932, more than six years after the foregoing payment was made, complainants sued the First National Bank, alleging that it was liable for the debt because it participated in the acts of misappropriation by Whittice; and complainants, sureties, having paid the State, were subrogated to its rights against the principal debtor.

The chancellor sustained the demurrer through which defendant set up the defense of the statute of limitations. Complainants appealed and insist that the rights of the State, including its exemption from the operation of the statute of limitations, passed to them on payment of the debt and since the statute would not run against the State it can not be set up as a defense against complainants as subrogees. They rely upon the case of *United States F. & G. Co.* v. *Union Bank & Trust Company*, 228 Fed., 448, and other authorities in accord with the opinion in the case cited, after referring to *American Co.* v. *National Bank*, 97 Md., 395, the court said that "the same right of priority which belongs to the State attaches to the claim in the hands of a surety who has paid the debt to the State; the analogy between a right of priority and a right of exemption seems complete."

In *American Co.* v. *National Bank, supra,* the court said so soon as a surety pays the debt of a principal debtor equity subrogates him to the place of a creditor and gives him every right, lien, and security to which

the creditor could have resorted for payment of the debt. These cases, and none others to which we have been referred, go so far as to hold that the statute of limitations, applicable to all but the sovereign, and suspended only so long as the sovereign refrains from suing, or until the right of action passes from it to another, would remain in suspense after extinguishment of the sovereign's right of action.

The rule applied in the decisions referred to is that delay by the sovereign cannot be added to delay by the subrogee to create the bar of the statute, that is to say, to complete the bar the time during which the right of action was in the State could not be added to the time during which the right of action was exclusively in complainant. The decisions relied on by complainants held that the statute did not run while the State owned the debt, that, is while the right of action was in the State.

Complainants did not *ipso facto* become subrogated to the rights of the State, but acquired only the right to subrogation, a right that they could only establish by the commencement and successful prosecution of a judicial proceeding. A distinct cause of action passed to complainants as subrogees, by equitable assignment of the debt, and after the debt passed to the subrogees the statute began to run, because the right of action upon it was not the right of action of the State of the complainants.

While the subrogees stood in the shoes of the creditor whose debt they paid, as equitable assignees, they were only assignees of the debt and of all the securities for its payment. It cannot be said they became assignees of the State's sovereign right of exemption from the operation of the statute of limitations.

We find no error in the decree of the chancellor. Affirmed.