**CITIZENS NAT. BANK OF WACO, TEX., v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

No. 9618.

Circuit Court of Appeals, Fifth Circuit.

Jan. 13, 1941.

Rehearing Denied March 8, 1941.

J. Blanc Monroe and Monte M. Lemann, both of New Orleans, La., and Harvey M. Richey, of Waco, Tex., for appellant.

Albert B. Hall, of Dallas, Tex., for appellee.

Before HOLMES and McCORD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

The nature of the present case is set forth in the opinion of this court on the former appeal reported in 100 F.2d at page 807. As will be seen, that opinion was somewhat unusual in that it was written by the Judge who dissented from the conclusions of the majority. A judgment in favor of the defendant bank was reversed and we said: "We all agree with appellant that once the moneys were deposited by the collector in the Bank as the authorized public depository, they could not be lawfully withdrawn except by checks payable to the treasurers, and if there had been any improper withdrawals of any of the funds after they had been distributed to the respective accounts the Bank would be liable." [100 F.2d 810.]

It was then pointed out what made the case difficult was the fact that the bank and tax collector had an agreement by which all moneys or checks were deposited in a collection account and later "in the depository to the various depository accounts". After discussing the question of the legality of such an agreement, in view of Article 7250 of the Revised Statutes of Texas, it was stated:

"The majority think the agreement was lawful only to the extent that it permitted the Bank to avoid the payment of interest while checks deposited for collection were in the process of collection. They think it was unlawful insofar as it undertook to change or affect the responsibility of the Bank for moneys deposited with it, or to permit the Bank to pay out the moneys, except as required by the statute.

"They think, in short, that the agreement was lawful only to the point of saving interest until the items were collected, but that it did not have the effect of preventing the funds from being in the depository and held by the Bank as such from and after their collection.

"They agree with appellant, therefore, that the Bank is liable to the State for paying out the funds as it did; that the surety is subrogated to the State's rights, and that the judgment must be reversed and the cause remanded, for further proceedings consistent with these views."

After the case was remanded, the defendant bank filed its third amended original answer on November 21, 1939, in which, in addition to a general denial of liability, it set up certain affirmative defenses, charged itself with all the funds deposited by the tax collector and claimed certain credits to offset the whole, including some $93,839.33 paid (to Gayle, tax collector) as tax collector's fees and the sum of $18,603.45 withdrawn by Gayle and deposited in the First National Bank of Waco, Texas, to cover a shortage in highway department funds in the latter bank, as to which appellee was also surety upon another fidelity bond. Defendant further pleaded estoppel based upon the allegation that the plaintiff had acted for many years as the surety upon similar bonds for the former tax collector, as well as for Gayle during the four-year term preceding the one in which the present shortage occurred, and charged "that the manner and method of handling the funds of the state and county" as disclosed in this case were the same and "well known to the complainants herein and the state of Texas * * *", for which reason it was claimed that the equities in favor of the respondent bank were superior to those of the plaintiff.

The appellant then set forth some nine provisions of state law which it claimed authorized the payment of funds other than to treasurers. By way of cross-claim or offset, it was also alleged that Article 2549 of the Revised Statutes of Texas, Vernon's Ann.Civ.St. art. 2549, required the tax collector to deposit with the respondent all tax moneys collected in default of which it was entitled to recover of him ten per cent as a penalty; that he had failed to so deposit some $39,351.95 collected as ad valorem taxes, upon which respondent was entitled to offset against the surety $3,935.19; further that the tax collector had collected the additional sum of $895,488.32 under the Motor Vehicle Registration Statutes, which he had also failed to deposit with respondent and upon which a similar penalty of ten per cent or $89,548.83 was due. Defendant accordingly prayed for judgment by cross-claim for the total of said funds or $93,484.02, and in the alternative that this amount be "offset against any judgment that the complainant might have against it * * *".

On the second trial below, plaintiff first filed a motion for judgment upon the prior record and the decision of the case upon appeal, which was denied. A motion to strike all of the affirmative

855

defenses was next made, as to which ruling was reserved until the conclusion of the trial on the merits. Thereupon, plaintiff submitted its case upon a portion of a stipulation of the facts. Defendant offered other portions of the stipulation, some of which were objected to for the same reason as urged in the motion to strike. The court, likewise, reserved ruling thereon until the entire case had been submitted. Defendant next offered the testimony of the witnesses, Widermeyer, Klayboecker and Schuler, given on the first trial. It also called an additional witness, Nolan C. Philipps, an accountant, and traced deposits from the collection account of the respondent bank to the highway account in the First National Bank of Waco, aggregating the sum of $18,603.45, of which $14,562.56 were shown to have been paid, $7,733.46 to the state and $6,830.10 to the county. These transactions were numerous and at practically all times when funds from the collection account in the respondent bank were withdrawn and deposited in the Highway account at the First National Bank, there was due to the state and county more than was then on deposit in the latter bank. In other words the tax collector was short in that account and these deposits were evidently made to cover the shortage. Of course, it is contended that, at least to the extent of the $14,567.56, the funds were traced into the hands of the state and county and that appellee having been surety in both instances, received the benefit. For this reason, credit is claimed therefor against the sum demanded in this suit.

Appellant bank also insisted that $93,-839.33 of the funds withdrawn from it as depository went to pay fees or commissions of the tax collector under the state law; that the surety had received credit for this amount in the adjustment of accounts represented by the judgment in the state court and that the appellant should likewise receive credit therefor in this proceeding, because it had traced those funds to the purpose which was intended by the state law. Of course, appellee replies that those withdrawals were not authorized according to the statute, and therefore were in violation of Article 7250, the same as all other payments made other than to treasurers.

## Opinion.

It is the settled law of the case (by virtue of the decision on the former appeal) that all deposits, whether in the collection account or to specific fund accounts were governed by the provisions of Article 7250, the only effect of using the collection account being to absolve the depository from liability for interest until the checks deposited had been paid and credited to the proper accounts. It is our view that the provisions of the state law relied upon by the appellant as the authority to pay checks drawn by the tax collector, other than to treasurers as required by Article 7250, can have no bearing upon the bank's liability in the present case. (a) Article 7332, R.C.S. 1925, Vernon's Ann.Civ.St. art. 7332, simply requires the tax collector to pay the fees of county and district attorneys and those of district clerks earned in delinquent tax suits. None of the items embraced in the judgment sued upon were withdrawn for these purposes. (b) Article 3937, Vernon's Ann.Civ.St. art. 3937, requires the tax collector to advance to tax assessors, in counties having a population in excess of 70,000, funds with which to make assessments. No such payments are included in the present demand. (c) Article 7141, Vernon's Ann.Civ.St. art. 7141, provides for the payment to county judges and district attorneys fees due them under inheritance tax assessments. No payments of this nature were made. (d) Articles 7331, 7332, Vernon's Ann.Civ.St. arts. 7331, 7332, authorize the payment to ex-officers of delinquent tax fees exempt under the old fee bill earned prior to January 1, 1931 and collected at a later date. None were included in the present claim. (e) Article 3891 requires the payment by the tax collector of the premium on his bond (Acts of the Legislature of 1923, amended January 1, 1936, Vernon's Ann.Civ.St. art. 3891). No such item is involved. (f) Article 7336f, Vernon's Ann.Civ.St. (Act of 1935), requires the payment of compensation for compiling delinquent tax records. This item is likewise not included in the demand. (g) Article 7335 and article 7335a, Vernon's Ann.Civ.St., require payment of compensation to delinquent tax collectors, but there is no claim of this nature. (h) Article 7264a, Vernon's Ann. Civ.St., requires the tax collector to pay

compensation of contractors for preparing plat books. No claim of this nature is included. (i) Article 3891, passed in 1923, but amended in 1935, Vernon's Ann.Civ.St. art. 3891, requires the remission of assessors and clerks' fees to the officers' salary fund, but no claim arises under this law.

It is simply urged that inasmuch as the tax collector was required and permitted by these several provisions to withdraw funds for purposes other than in making payments to treasurers, the bank was not required to scrutinize withdrawals and might assume that checks drawn to the tax collector were for payment of such items, since he could pay them either by check or in cash. However, as stated above, the law of the case was settled on the former appeal to the effect that the bank was liable for payments made other than to treasurers, unless the funds were affirmatively traced to the purposes required by law.

As to the plea of estoppel or superior equity as applied to withdrawals to cover shortages in the highway account in the First National Bank, we can see little difference between those circumstances and a case where the collector had deposited the moneys so withdrawn to his personal credit. The moneys deposited with the defendant were of a specific character, to go to specific departments of the state, whereas those in the highway account were of an entirely different nature and dedicated to other purposes. It was a complete diversion from the intended destination and to prevent which Article 7250 was enacted. It so happened that the surety, appellee here, was also upon the bond of the tax collector with respect to the highway funds. If the appellant bank had not permitted the collector to withdraw deposits in violation of Article 7250, no one can say whether or not he would have misused the highway funds and produced a shortage there. The appellant had thus made it possible to cover up. A different course might have led to prompt discovery by the state or surety causing the collector to make good from other sources before the shortage had grown to such proportions. On the other hand, the appellant's conduct made it easy. The funds were in its hands and it was required to know the purpose of checks not made to treasurers, while the surety might assume that it would insist

upon the collector complying with the law. See First National Bank v. Farrell, 3 Cir., 272 F. 371.

As to the withdrawals by the collector for fees or commissions, it is true that the statute does not say specifically who shall approve such claims before they are paid, and that they were examined by an auditor and approved by the clerk, but the county commissioners were required to review these matters at stated periods, and we think it was reasonably contemplated that by these means there would be such a check as would protect the public funds before payments were made. It seems reasonably clear that the county commissioners were the only ones who had the power or authority to approve these fees. See New Amsterdam Casualty Co. v. First National Bank et al., Tex.Civ.App., 134 S.W.2d 470; Austin v. Kiser, Tex.Civ.App., 277 S.W. 411, affirmed, Tex.Com.App., 286 S.W. 1082. In any event, we think that a complete answer to all of the appellant's contentions is that, had it complied with the law (Article 7250) there would have been no possibility of the present shortage and the loss is due entirely to its dereliction of duty.

With respect to the contention that the appellant is entitled to offset, as against the surety, ten per cent of ad valorem taxes and motor vehicle fees collected and not deposited in the bank, we quote Article 2549 of the R.C.S. of Texas, Vernon's Ann.Civ.St. art. 2549, as follows:

"As soon as said bond be given and approved by the Commissioners' Court, and the Comptroller, an order shall be made and entered upon the minutes of said Court designating such banking corporation, association, or individual banker, as a depository for the funds of said county until sixty days after the time fixed for the next selection of a depository; and, thereupon, it shall be the duty of the county treasurer of said county, immediately upon the making of such order, to transfer to said depository all the funds belonging to said county, as well as all funds belonging to any district or other municipal subdivision thereof not selecting its own depository, and immediately upon receipt of any money thereafter, to deposit the same with said depository to the credit of said county, district and municipalities; and, for each and every

failure to make such deposit, the county treasurer shall be liable to said depository for ten per cent upon the amount not so deposited, to be recovered by civil action against such treasurer and the sureties on his official bond in any court of competent jurisdiction in the county. It shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collections and settlement thereon, which shall bear interest on daily balances at the rate, if any, fixed for such deposits of the tax collector by the Commissioners' Court in its order designating such depository or depositories, and the interest accruing thereon shall be apportioned by the tax collector to the various funds earning the same. The bond of such county depository or depositories shall stand as security for all such funds. If the tax collector of such county shall fail or refuse to deposit tax money collected as herein required, he shall be liable to such depository or depositories for ten per cent upon the amount not so deposited and shall in addition be liable to the State and county and its various districts and other municipal subdivisions for all sums which would have been earned had this provision been complied with, which interest may be recovered in a suit by the State. Upon such funds being deposited as herein required, the tax collector and sureties on his bonds shall thereafter be relieved of responsibility for its safe-keeping. All money subject to the control of the county treasurer or payable on his order, belonging to districts or other municipal subdivisions selecting no depository, are hereby declared to be 'county funds' within the meaning of this chapter and shall be deposited in accordance with its requirements and shall be considered in fixing the amount of the bond of such depository. (Acts 1905, p. 393, as amended Acts 1917, p. 19; Acts 1933, 43rd Leg., p. 604, ch. 201.)"

The bond in the present case was given by the tax collector to insure faithful performance of his duties to the state and its departments. It was not, primarily at least, for the benefit of the appellant depository. Recoveries thereon can be had by those only who are either expressly or by necessary implication included as obligees. The Act of the Texas legislature, Vernon's Ann.Civ.St. art. 6003, authorizing suits upon official bonds "by the party injured" did not become effective until August 9, 1935, some seven months after the last term of office of the tax collector had expired; so that we must determine the rights of the bank in this case by the provisions of Article 2549 above quoted. Penal statutes must be strictly construed and this one is highly penal. It cannot be ignored that the lawmaker saw fit, as to county treasurers, to require them "immediately" upon the designation of depositories by the commissioners of the county "to transfer to said depository" the official funds coming into their hands and for their failure so to do, they were made "liable to said depository for ten per cent upon the amount not so deposited, to be recovered by civil action against such treasurer *and the sureties on his official bond* [italics by this court] * * *". As to tax collectors, it is likewise made their duty "to deposit all taxes collected" for the state and county "in such depository or depositories, as soon as collected * * *" and if they fail, then "they shall be liable to such depository or depositories for ten per cent upon the amount *not so deposited * *"*. (Italics by this court.) We are required to construe the law in the light of general principles and jurisprudence. It is well to remember that the bank is as to the bond contract a third person, and the right created in its favor by Article 2549 was a private one, in which the state, when collecting for the shortage or unfaithfulness of the tax collector, had no interest and could not recover. It would seem to follow that neither by express or equitable subrogation could the state transfer any such cause of action and the bank must stand upon its own remedies alone under the law. In brief, counsel for appellant frankly admit that they have been unable to find any Texas jurisprudence on the subject, but cite 37 C.J., page 714, footnote 19 (erroneously referred to as 38 C.J. footnote 20), along with other cases. However, we think the only pertinent authority which we have been able to find is that cited in footnote 19, to-wit, the United States Fidelity & Guaranty Company v. Union Bank & Trust Company, 228 F. 448, by the 6th Circuit. In that case the surety

858

company had paid the state's claim against the tax collector and had sued the bank, just as the plaintiff has here, and it was held that, as to the tax funds themselves, which the surety had paid, it was protected by the state's exemption from limitations. The court, there, through Judge Denison, frankly stated that there was a dearth of authorities and relied mainly upon the British case of Lambert v. Taylor, 4 B.C. 138, in which it was held that where a claim was transferred to the Sovereign by the suicide of the owner, limitations did not run during the period of its ownership. In this case, as above stated, the state never owned the claim for penalty due the depository. No occasion existed for the transfer or subrogation of any right from the state to the bank, but on the contrary its rights are asserted by the plaintiff for a liability, which, in effect, amounts to an alleged tort by defendant. Appellant appears to concede that unless it can have the benefit of the suspension of prescription enjoyed by the state, the applicable statute of two years would apply. Vernon's Ann.Civ.St. art. 5526. Our conclusion is that the surety was not liable for the claimed penalties, and, in any event, they are barred by limitation which prevents their use as an offset by the bank in this case.

The judgment appealed from is affirmed.