**McCLOSKEY & COMPANY, INC., etc.**

v.

**Marcellus WRIGHT, Jr., et al.**

**Civ. A. No. 102–73–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 20, 1973.

224

Hunton, Williams, Gay & Gibson, Beverly C. Read, Richmond, Va., for plaintiffs.

Murray H. Wright, McGuire, Woods & Battle, Richmond, Va., for defendants.

MEMORANDUM

MERHIGE, District Judge.

McCloskey & Company-C. H. Leavell Company, a joint venture (hereafter "builders") brings this action against Marcellus Wright, J., and other architects (hereafter "architects") for damages allegedly incurred by virtue of faulty construction design. Jurisdiction is attained by virtue of 28 U.S.C. § 1332. The parties are presently before the Court pursuant to the architects' motion to dismiss. Respective counsel have briefed the issues raised thereby, and it is upon same that this matter is ripe for disposition.

The basic and undisputed facts are as follows. On June 30, 1966 the United States contracted with the architects for the design of a post office building in Richmond, Virginia and the supervision of its construction. Pursuant to that contract the architects developed plans and specifications. Subsequently plaintiff builders were awarded a contract from the United States to build the post office. In February of 1968 the United States assigned to the builders the drawings and specifications prepared by the architects for construction of the project. The builders proceeded to erect the post office upon the architects' design. The United States took possession of the post office on October 1, 1970 but withheld formal acceptance of the project because of a defective roof. Builders allege that they have been forced to incur additional expense to repair the roof and seek damages here from the architects on the premise that construction inadequacies were caused by faulty design and/or construction supervision by the architects. Builders also seek indemnity from the architects for legal expenses involving litigation with the roofing subcontractor.

Specifically, the amended complaint sets forth five theories of recovery:

1. Count I: breach of warranty and breach of contract,
2. Count II: breach of contract for a third party beneficiary,
3. Count III: negligence in design,
4. Count IV: negligence in supervision,
5. Count V: indemnity for litigation expenses incurred by builders in suits against them by the roofing subcontractor.

The legal issues posed with respect to each count will be considered seriatim.

Count I

The gravamen of Count I is that architects warranted that the project design was fit, accurate and complete and that for the alleged breach of said warranty, builders may recover expenses caused it in repairing the roof. Architects have moved to dismiss Count I on several grounds, but in view of the Court's disposition of their plea of the statute of limitations only the latter need be treated.

The applicable statute of limitations is supplied by the law of Virginia, the *lex fori*, see Hospelhorn v. Corbin, 179 Va. 348, 19 S.E.2d 72 (1942). Va. Code § 8–13 provides a period of limitations of five years for actions based upon contracts in writing not under seal. Under familiar principles of law, the statute begins to run from the time of a violation or breach of a legal duty or obligation owed a plaintiff by a defendant. Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257 (1969). See also Kilduff v. United States, 248 F.Supp. 310 (E.D.Va.1961).

The architects allege in support of their motion that up to the date of the assignment of plans, the government had a cause of action, if any, for breach of warranty. This theory impliedly states that the violation of the warranty occurred at the tendering to the government of the design, discussion *infra*. They therefore assert that builders' claim should be measured from no later than the date of assignment, 2/12/68. The builders agree in part with this reasoning but contend that the assignment was not effective until March 11, 1968, when they accepted the assignment by

the government of the plans and drawings. Because the complaint was filed March 2, 1973, under this theory of arising obligation developed by counsel, the date of effective transfer of obligations is crucial. Builders also allege, however, that the breach did not precede the assignment of the plans but rather that it occurred at the time the government required McCloskey to do corrective work. While that date is not specified, it obviously was subsequent to the acceptance of the assignment and within the five year period.

These contentions in turn raise two issues. First, when did the alleged breach occur, at the time the plans were submitted to the government or at the time the present plaintiff suffered monetary injury? Second, when did the legal obligation, which was allegedly breached, arise, on February 12, 1968 (date of assignment), March 11, 1968 (date of acceptance), or from the date the obligation arose to builders' assignor?

■ In Richmond Redevelopment and Housing Authority v. Laburnum Construction Corporation, 195 Va. 827, 80 S.E.2d 574 (1954), the Virginia Supreme Court ruled that a property damage claim upon a theory of tortious breach of warranty arises at the time the defect or condition causing the breach occurs. Thus in *Laburnum*, a defective gas pipe was installed six feet under ground. Several years later gas leaked from the pipe and caused an explosion. Plaintiff had no knowledge that the pipe was defective and it was undisputed that acquiring that knowledge before the explosion would be difficult. The Court held that the cause accrued from the time the pipe was installed because the warranty applied to the pipe. While damages caused by the explosion were "consequential" and thus possibly recoverable, the direct damage in violation of the warranty giving rise

to the cause of action was the installation of the defective pipe. Moreover, the Court added, significantly for these purposes, that "the difficulty in ascertaining that a cause of action exists plays no part in the general rule." This ruling was subsequently reaffirmed in *Caudell*, 168 S.E.2d 257, and recognized as controlling by the United States Court of Appeals for the Fourth Circuit in Sides v. Richard Machine Works, Inc., *supra*, 406 F.2d 445 (1969). While *Laburnum* strictly deals with the tortious act of breaching a contract, rather than liability under the contract for breach of same, the conclusion that the same principle applies to accrual of the cause of action is inescapable.

■ Applying this reasoning to the present matter, the breach of warranty occurred at the time the architects tendered allegedly defective plans to the government. The fact that the defect may not have been ascertainable until a later date is of no consequence under the *Laburnum* rule.[1]

Given the conclusion, therefore, that the breach occurred upon the tendering of the plans (8/24/67), it must be determined when, for these purposes, a legal obligation arose between the parties. There are two possibilities:

1) The assignment effected *ipso facto*, a transfer to builders of architects' obligation to the government and therefore builders acquired an existing cause of action upon assignment which dates from August 24, 1967, the date the plans were tendered to the government.

2) The alleged obligation of architects to builders arose at the time the government effectively assigned the plans (either 2/12/68 or 3/11/68) and the cause of action matured by virtue of the alleged defect in specifications, the moment the assignment was effected.

---

1. Under this reasoning, the leaking roof was a consequential though possibly foreseeable damage resulting from allegedly defective plans. Technically, had the government known of the defect it could have sued for breach of contract at the time the plans were tendered, seeking either specific performance for correct changes or damages for the cost of acquiring a correct design.

■■ Builders' claim in Count I is in the main premised upon the theory that the assignment of plans by the government transferred the obligations owed the government by the architects to the builders.[2] These obligations included a warranty of fitness of the specifications. As stated by the builders, "McCloskey [the builders], as assignee of the government's contract with the architect, steps into the shoes of the government assignor." Plaintiff's brief at 16. This assertion in turn requires the application of the general rule that a party may assert the same defenses against an assignee that he can against an assignor. Were the assignor in this matter a private party, it would therefore be logical to deduce that the statute of limitations assertable against a private assignor could be so asserted against the architects-assignees. The reason for this result is that the statute of limitations is directed to the claims sought to be asserted, not to the parties seeking to assert them. Street v. Consumers Mining Corporation, 185 Va. 561, 39 S.E.2d 271 (1946). To allow the assignee to recommence the running of the statute, absent a new promise from the party sued, at the time of assignment, would defeat the purpose and design of the statute as a statute of repose. See *Street, supra*.[3]

■■ The assignor in this matter is not, of course, a private party—it is the government; and the government is immune to the bar of the statute of limitations. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). The law appears to be well-settled, however, that an assignee of a government claim may not rely upon the government's immunity to the statute of limitations where it is intended to enforce the claim for private benefit. Lovey v. Escambia County, 141 So.2d 761 (Fla.App.1962), Fidelity & Deposit Co. of Md. v. First National Bank, 165 Tenn. 395, 54 S.W.2d 964 (1932). See generally 53 C.J.S. Limitations of Actions § 18.

The remaining question, therefore, is whether the statute begins to run from the moment the cause of action arises in favor of the government, or whether it begins to run from the date of assignment. The Court is unaware of any Virginia case dealing with this matter, but the few jurisdictions that have considered it have in effect adopted the former interpretation, i. e., that the statute runs from the time the cause accrues. Lovey v. Escambia County, supra, 141 So.2d 761. See also Shumway v. State, 63 Ariz. 400, 163 P.2d 274 (1945) where a statute expressly provided that the statute of limitations runs from the date of assignment of government property to a private party. Virginia does not have such a statute applicable here.[4] The general result is appropriate, for the statute of limitations does not affect the validity of a claim but merely sets up a defense to it. The governmental exception does not

---

2. Builders also rely upon cited cases which hold that a contractor may hold a property owner liable for damages caused by faulty construction where the cause of same was defective plans supplied by the owner. While these cases indicate that the risk of loss may properly fall upon the owner, and impliedly in indemnity upon the architect, they do not stand for the proposition that a cause of action based upon the owner-architect contract will lie for the builder. Discussion, *infra*.

3. One case of some vintage applies these principles to the converse situation: an assignee, standing in the shoes of the assignor, may rely on a plea of the statute available to the assignor against the party asserting the claim. Walker v. Zurgess, 44 W.Va. 399, 30 S.E. 99 (1898).

4. Courts have applied the contrary rule where the transferee in interest is a subrogee. The theory propounded is that suit is brought upon a separate right of subrogation which accrues at the time of transfer. See Fidelity & Deposit Company of Maryland, *supra*, 54 S.W.2d 964. See however Citizens National Bank v. Fidelity & Deposit Company, 117 F.2d 852 (5th Cir. 1941), which rejected application of this rule of suspension where the state did not own the actual rights asserted by the subrogee. See generally 53 C.J.S. Limitations of Actions § 18.

preserve a right of action, but merely exempts the sovereign from the general defense established. See Commonwealth v. Deford, 137 Va. 542, 120 S.E. 281, 284 (1923); Va.Code § 8–35 (as amended 1958). While this construction may in effect penalize the assignee for the laxness of the sovereign-assignor, the contrary result would violate the public policy of the doctrine of repose incorporated in the statute of limitation by allowing suits to be brought many years after an actionable wrong has occurred merely because the government had deferred assignment to a late date. See generally Barnes v. Sears, Roebuck & Company, 406 F.2d 859 (4th Cir. 1967).

The seemingly inequitable result here stems not from this latter construction, but from the Virginia rule charging a plaintiff with knowledge that a cause of action arises for breach of warranty at a time when the ascertainment of that knowledge is difficult. This Court's disagreement with that construction is of no consequence, for it is bound to same by the Virginia Supreme Court and the Court of Appeals for this circuit in aforementioned case law. Under more equitable conditions, were the builders aware of alleged defects in the plans, or even that the statute of limitations would bar a claim on their part for said defects, they could rightfully have refused to accept the assignment.

█ For these reasons, the Court concludes that the failure of the builders to bring this claim prior to five years from 8/24/67 (the date on which the architects tendered the plans to the government) renders this claim time-barred.

## Count II

Count II is similar to Count I except that it alleges that the builders are third-party beneficiaries of the architects' contract with government and seeks to recover on the basis of an alleged violation of duties owed the builders as third-party beneficiaries.

█ The first issue is whether this claim is barred by the statute of limitations. The Court is satisfied that Virginia Code § 8–13, limitations on actions arising from a contract, applies as Count II is premised upon duties alleged to flow from the architects' contract. Assuming that a duty does exist, as the Court must for these purposes, it logically would not arise until the third-party relationship with the builders was formulated. Under the general principles discussed above, the cause of action would occur at the time of assignment, when the duty and the breach (alleged faulty design) merged into an actionable wrong. See Caudell v. Wise Rambler, supra, 168 S.E.2d 257. Because traditionally an assignment does not take effect until the assignee has tendered formal acceptance, see 6 C.J.S. Assignments § 73, the date of said acceptance marks the beginning of the contractual relationship. In the present matter, the assignment was accepted on March 11, 1968, within the five year period of limitations.

It is of course arguable that the architects' contract contemplated a present duty, as of the contract date, to an unnamed third-party beneficiary-builder, and that that duty was breached when the allegedly defective plans were tendered to the government. Under this view, the cause of action relates back to August 24, 1967, leaving the present claim time-barred. See discussion, *supra*. While evidence developed at trial may well show that this was the intent of the primary parties, the Court is satisfied that at this stage such a construction would be unjust. Unaware of any Virginia case law requiring this approach, the Court will not so hold. The alternate approach, which the Court adopts here, assumes that the duty to the third-party beneficiary was intended to arise upon the designation of that third-party discussion, *infra*.

The architects challenge the builders' standing as third-party beneficiaries of the architects' contract. Virginia Code (1950) § 55–22 applies:

§ 55–22. When person not a party, etc., may take or sue under instru-

ment.—An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although, he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

The touchstone is whether the architects' contract was made for builders' benefit "in whole or in part." That determination depends in turn upon the intent of the primary contracting parties, which may be gleaned either upon the face of the contract or from extrinsic evidence in that regard. Graybar Elec. Co. v. Doley, 273 F.2d 284 (4th Cir. 1959); Norfolk-Portsmouth Newspapers, Inc. v. Stott, 208 Va. 228, 156 S.E. 2d 610 (1967).

The builders invoke Article IX of the architects contract in support of their claim. That section reads as follows:

## ARTICLE IX

### Ownership of Documents

9–1. It is agreed that all original drawings, designs, specifications, models, renderings and other incidental architectural-engineering work or materials furnished hereunder shall be the property of the Government. The Government shall have the right to assign this Agreement or any part hereof, to the Successful Bidder and/or Contractor including the transfer of the aforementioned documents. Any such assignment, however, shall not release the Government from any of its obligations under the provisions of Article IV hereof.

This language clearly does not dispose of the issue, notwithstanding the fact that the tentative nature of the words "shall have the right to assign" is superficially supportive of architects' position that no benefit for a potential assignee was intended. The Court is unwilling, however, to foreclose relief to the builders solely on the basis of this language. Extrinsic evidence may well show, for example, that it is customary for all architectural plans to be assigned; that the contractual procedure here used merely enabled the government to closely monitor the proposed project designs; that in practice the plans are in actuality formulated for the use and benefit of the builder eventually chosen by the government. The ultimate assignment of the plans in question made to the builders in consideration of payment of a substantial sum is probative of this view.[5] The issue of intended benefit is, of course, a central issue of this action.

Absent an evidentiary hearing, the Court concludes for these reasons that at this stage the architects have not carried their burden. The motion to dismiss with respect to Count II shall be denied.

Count III

Count III is founded in tort, alleging that the architects "negligently and improperly designed the project and its roof." Architects challenge this claim on several grounds, the first being the statute of limitations.

The architects contend that Virginia Code § 8–24 governs this question, and the applicability of that provision is not in general disputed by the builders. The question in issue is

---

5. Builders paid the government $225,026.77 for the plans. The government originally paid the architects $292,500 for the plans and services. A logical inference of the payment of this large amount by builders would be that builders took same into consideration in preparing its bid as a cost of constructing the project.

whether this cause of action is one that would survive: if it does survive, a five year period governs; if not, a one year period. In this regard, Richmond Redevelopment and Housing Authority v. Laburnum Construction Corporation, *supra*, 80 S.E.2d 574, is directly on point. As was discussed, *supra*, under the reasoning of *Laburnum* the leaking roof is at most a consequential damage of what is here alleged to be the negligent act, i. e. faulty design. A claim for consequential damages does not survive. Carva Food Corporation v. Dawley, 202 Vt. 543, 118 S.E.2d 664 (1961). Therefore, the one year limitation governs. Further investigation as to whether the claim accrued at the date the plans were tendered or the assignment accepted is unimportant, as in either case the one year period was exceeded. This claim is accordingly time-barred.

Count IV

Count IV alleges that the architects "negligently and improperly supervised the erection of the project and its roof in permitting, causing or requiring the project to be improperly constructed in an unworkmanlike manner." The architects, in support of their motion, assert "[i]t is novel indeed for a contractor to predicate its recovery upon the architect's failure to prevent the contractors own nonfeasance." In essence, it is thus asserted that this claim is inherently barred by contributory negligence. The builders contend that evidence developed at trial would show that builders were "passively negligent" and the architects "actively negligent," thereby supporting a claim for contribution or indemnification.

■ The Court is satisfied that Count IV states a cause of action in negligence. Development of the facts at trial may indeed show that the architects were actively negligent and builders passively negligent, which facts would merit indemnity from one joint

tortfeasor to another. See United States v. Savage Truck Line, 209 F.2d 442 (4th Cir. 1953). The facts which would substantiate that claim are controverted. At this stage, however, it cannot be said as a matter of law that the allegations fail to state a cause of action.

■ Under Virginia law it is settled that the three year statute of limitations applies here. Nationwide Mutual Insurance Company v. Jewel Tea Company, 202 Va. 527, 118 S.E.2d 646 (1961). The cause accrues upon the payment or discharge of the obligation. *Jewel Tea Company, supra.* Because the builders have allegedly suffered damage and will further suffer damage in the form of additional expenses, this claim is neither premature nor time barred. See generally Bell v. Federal Reserve Bank, 57 F. R.D. 632 (E.D.Va.1972).

Count V

■ Count V alleges a cause of action in indemnity for litigation expenses caused by a suit brought by the roofing subcontractor, Whitley. The gravamen of this claim is that architects' breach of their contract with the government and with the builders as assignee caused builders to suffer injuries, among them being litigation expenses with the roofers. In Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871 (1961) the Virginia Supreme Court stated that damages of this sort flowing from a breach of contract are recoverable. However, for the reasons stated by the Court in discussion under Count I, these damages are but incidental or consequential damages of the breach which occurred upon the tendering of the plans to the government. This claim if asserted upon a theory of breach of warranty to an assignee is accordingly time barred.

■ While the builders have not so argued, the Court recognizes that it is also tenable to maintain this claim upon the theory of third party beneficiary.[6]

---

6. The amended complaint states:
"As a result of its reliance on the wrongful representation of Wright that the drawings and specifications were free from defects [see Art. XVII, Par. 17–2 of architects contract], McCloskey [builders] has been forced to defend two actions . . . ."

For the reason stated in discussion under Count II, the claim is not time barred on that basis.

An order consistent with this memorandum shall issue.